James Duke CREEL,
Petitioner–Appellant,

v.

Henry B. KEENE, Chairman, Board of Pardons and Paroles,
Respondent–Appellee.

No. 90–8510
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 16, 1991.

James Duke Creel, Bridgeport, Tex., pro se.

Wm. C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

**E. GRADY JOLLY, Circuit Judge:**

In 1971, James Duke Creel was convicted of murder by a Texas state court and sentenced to life imprisonment. He now appeals the district court's denial of his habeas petition, arguing that Texas Parole Board's 1990 decision to refuse him parole violated his fourteenth amendment right to due process. The district court rejected Creel's contention on the ground that the Texas parole statute afforded Creel no constitutionally protected liberty interest; we agree and thus affirm.

I

The circumstances surrounding Creel's offense—set out in *Creel v. State,* 493 S.W.2d 814, 815–18 (1973)—are of no moment to this appeal. The only facts we need mention are those that pertain to Creel's ongoing relationship with the Texas Parole Board.

Creel first became eligible for parole in 1981. Since then, the Board has considered him for parole fourteen times and—on each occasion—has denied him a premature release. Creel's most recent encounter with the Board began on April 13, 1990, when it gave him a tentative parole month of July 1990, pursuant to *Tex. Code Crim.Proc.* art. 42.18 § 8(a) (Vernon Supp.1990). Less than one month later, on May 10, 1990, the Board notified Creel that he would not be released in July; according to the Board, it had obtained "additional information" indicating that Creel, if released, would "increase the likelihood of public harm."

Creel responded to the Board's 1990 decision by filing the instant petition,[1] his latest in a long but undistinguished line of habeas applications.[2] In it, Creel presented

---

1. More precisely, Creel responded to the Board's action by amending a habeas petition that he had filed on January 25 of that year.

2. Previously, Creel has proffered eight state and five federal habeas petitions. Creel's first four state applications raised a variety of constitutional claims challenging his conviction. *See Ex parte Creel,* App. No. 7138–01 (denied September 22, 1982, without written order); *Id.,* Application No. 7138–02 (denied December 7, 1983, without written order); *Id.,* Application

No. 7138–03 (application for leave to file denied July 24, 1984); *Id.,* Application No. 7138–04 (denied March 16, 1988, without written order on the findings of the trial court), *cert. denied, Creel v. Lynaugh,* 486 U.S. 1034, 108 S.Ct. 2020, 100 L.Ed.2d 607 (1988). In his fifth state application, Creel challenged the state's distribution of "good time" credit. *Id.,* Application No. 7138–05 (denied October 19, 1988, without written order). His next two state applications contested Texas's denial of his parole applications. *Id.,* Application No. 7138–06 (denied October 19,

his due process argument alongside a contention that the Board's decision amounted to a Bill of Attainder. The district court denied the petition on August 15, 1990, but, pursuant to 28 U.S.C. § 1915, granted Creel probable cause to lodge this timely appeal.

## II

Creel has chosen to drop his Bill of Attainder claim, opting instead to rest his hopes of habeas relief on his due process argument. This argument is moored in Creel's contention that 1987 amendments to the Texas parole statute, *Tex.Code Crim. Proc.* art. 42.18 (Vernon Supp.1990), gave him a liberty interest in parole sufficient to bring into play the guarantees of the fourteenth amendment. Creel concedes that we addressed a similar contention in an earlier case, *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir.1981), wherein we concluded that "the Texas Adult Probation, Parole and Mandatory Supervision Law, Tex.Code Crim.Proc. art. 42.12 (Vernon 1979), does not create that protectible expectancy of release recognized by the Supreme Court in *Greenholtz [v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ]." He insists, however, that *Williams* is easily distinguishable in that it antedates the 1987 amendments as well as the Court's holding in *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), on which Creel's position rests.

We cannot further explicate this position without reproducing those 1987 amendments pertinent to Creel's claim of a liberty interest:

Article 42.18 § 8(a):

The board is authorized to release on parole any person confined in any penal or correctional institution who is eligible for parole under section (b) of this section. The board may consider a person for release on parole if the person has been sentenced to a term of imprisonment in the Texas Department of Corrections, is confined in a jail of this state, a federal correctional institution in another state, and is eligible for parole under Subsection (b) of this section. The board shall release a person on parole during the tentative parole month established for the person unless the Board determines that the person's release will increase the likelihood of harm to the public or that the person has failed to progress in the manner required by the board in Subsection (e) of this section. The department shall provide the board with sentence time credit information on persons described in this section. The period of parole shall be equivalent to the maximum term for which the prisoner was sentenced less calendar time actually served on the sentence. Every prisoner while on parole shall remain in the legal custody of the state and shall be amenable to conditions of supervision ordered by the board. All paroles shall issue upon order of the board.

Article 42.18 § 8(e):

Not later than the 120th day after the date on which a prisoner is admitted to the Texas Department of Corrections, the board shall secure all pertinent infor-

1988, without written order), *cert. denied, Creel v. Heckman*, 488 U.S. 1014, 109 S.Ct. 807, 102 L.Ed.2d 797 (1988); *Id.*, Application No. 7138–07 (denied October 13, 1989, with written order citing Creel for abuse of the writ). In his final state application to date, Creel attacked his conviction on state law speedy trial grounds. *Id.*, Application No. 7138–08 (leave to file denied with written order on December 13, 1989).

In his first federal petition, Creel asserted a Fourth Amendment violation. *Creel v. Estelle*, 448 F.Supp. 894 (N.D.Tex.1977) (relief denied), *c.p.c. denied*, No. 77–8400 (5th Cir.1977). His second petition alleged a Fourth Amendment violation and a claim that he was forced to give up one constitutional right in order to assert another. *Creel v. Estelle*, No. CA–1–83–4 (N.D. Tex.1983) (relief denied), *c.p.c. denied*, No. 83–1295 (5th Cir.1983). In his third and fourth petitions, Creel again asserted Fourth Amendment violations. *Creel v. McCotter*, No. CA–1–84–12 (N.D.Tex.1984) (denied as a successive petition), *c.p.c. denied*, (5th Cir.1984); *Creel v. McCotter*, No. CA–1–85–129 (N.D.Tex.1986) (denied as a successive petition), *c.p.c. denied*, No. 86–5074 (5th Cir.1986). In his fifth petition, Creel asserted a speedy trial violation under state law. *Creel v. Estelle*, No. CA–1–89–077–C (N.D.Tex.1990) (dismissed without prejudice for failure to exhaust state court remedies).

mation relating to the prisoner, including but not limited to the court judgment, any sentencing report, the circumstances of the prisoner's offense, the prisoner's previous social history and criminal record, the prisoner's physical and mental health record, a record of the prisoner's conduct, employment history, and attitude in prison, and any written comments or information provided by local trial officials or victims of the offense. Except as otherwise provided by this subsection, within the 120–day period, the board shall establish a tentative parole month for the prisoner based on information gathered under this subsection and a proposed program of measurable institutional progress the board determines the prisoner must meet before being released on parole. The board is not required to establish a tentative parole month and program of progress if the board determines that to do so would be inappropriate in the prisoner's case and indicates that determination in the prisoner's file. The board shall notify the Texas Department of Corrections of each prisoner's tentative parole month and proposed program of measurable institutional progress. Within 30 days of receipt of the board's notice, the Texas Department of Corrections shall advise the board if any of the proposed programs of measurable institutional progress or the requirements of those programs cannot be achieved within the prisoner's unit of incarceration. The tentative parole month may not be a date that is earlier than the prisoner's initial parole eligibility date, as calculated or projected under Subsection (b) of this section. The board may revise a tentative parole month established under this subsection at any time the board determines is proper. The department shall work closely with the board to carry out the tentative parole program. The board and the department shall adopt a memorandum of understanding that establishes the respective responsibility of the board and the department in the operation of the tentative parole program and in the monitoring of the progress of inmates in the department. The memoran-

dum must also establish an information committee that includes representatives of the board and the department and meets regularly to assess information needs, solve information flow problems, and reduce duplication in information gathering. The information committee shall work towards the development of a common data base that meets the needs of both the board and the department. The board and the department shall coordinate the development of the memorandum of understanding and each by rule shall adopt the memorandum.

Article 42.18 § 8(f):

(2) Before considering for parole a prisoner who is serving a sentence for an offense in which a person was a victim, the board, using the name and address provided on the victim impact statement, shall make a reasonable effort to notify a victim of the prisoner's crime, or if the victim has a legal guardian or close relative of the deceased victim, the notice must contain a request by the board that the guardian or relative inform other persons having an interest in the matter that the prisoner is being considered for parole. If a hearing is held, the board shall allow a victim, guardian of a victim, close relative of a deceased victim, or representative of a victim or his guardian or close relative to provide a written statement. This subsection may not be construed to limit the number of persons who may provide statements for or against the release of the prisoner on parole. The board shall consider the statements and the information provided in a victim impact statement in determining whether or not to recommend parole. However, the failure of the board to comply with notice requirements of this subsection is not a ground for revocation of parole. Before ordering the parole of any prisoner, the board may have the prisoner appear before it and interview him. Parole shall be ordered only for the best interests of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. The board shall develop and implement standard parole guidelines that shall be the basis criteria on which parole deci-

sions are made. The parole guidelines shall be developed according to an acceptable research method and shall be based on the seriousness of the offense and the likelihood of favorable parole outcome. The Board shall review the parole guidelines periodically and make any revisions considered necessary by virtue of statistical analysis of board actions using acceptable research methodology. A prisoner shall be placed on parole only when arrangements have been made for his employment or for his maintenance and care and when the board believes he is willing and able to fulfill the obligations of a law abiding citizen. Every prisoner while on parole shall remain in the legal custody of the state and shall be amenable to the conditions of supervision ordered by the board.

Acts 1987, 70th Leg., ch. 1101, § 8, eff. Sept. 1, 1987. These amendments comprised material both old and new: For instance, whereas most of § 8(f) was taken verbatim from the earlier version of the parole statute, the tentative parole month system detailed in § 8(e) was altogether new.

Section 8(a) of these amendments constitutes the crux of Creel's argument. It admonishes that "[t]he Board *shall release* a person on parole during the tentative parole month established for the person unless the Board determines that the person's release will increase the likelihood of harm to the public or that the person has failed to progress in the manner required of him by the Board in Subsection (e) of this section" (emphasis added). According to Creel, this language is mandatory, not discretionary; if the board assigns a tentative parole month, determines that release would not endanger public safety, and concludes that institutional progress has been made, it has committed itself to grant release. Hence, concludes Creel, the amendments give him a liberty interest, because § 8(a)—like the statute at issue in *Allen*—"uses mandatory language ('shall') to 'creat[e]' a presumption that parole release will be granted' when the designated findings are made." *Allen*, 107 S.Ct. at 2420 (quoting *Greenholtz*, 99 S.Ct. at 2106).

Although *Williams* indeed has limited bearing on the question of whether the 1987 amendments give Texas inmates an "expectancy of release,"[3] *Allen*, 107 S.Ct. at 2417, we find Creel's argument unpersuasive. In the first place, we have grave doubts as to whether the 1987 version of the Texas parole statute ever created a liberty interest in parole. In *Greenholtz* and *Allen*, the Court was faced with Nebraska and Montana statutes that tempered the language of mandatory release— "shall"—with specific conditions and restrictions. Naturally, the Texas statute does the same, requiring that "[t]he Board

---

**3.** The *Williams* holding was ensconced in three subsections of the then-extant Texas parole statute:

§ 14(a)(e):
A parole panel, as hereinafter provided, may recommend the granting, denying, or revocation of parole....
§ 15(a):
The Board is authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State who is eligible for parole....
§ 15(f):
Before ordering the parole of any prisoner, the Board may have the prisoner appear before it and interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care, and ... when the Board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Every prisoner while on parole shall remain in the legal custody of the institution from which he was released but shall be amenable to the orders of the Board.
*Williams*, 641 F.2d at 276. In our view, the language of these subsections—particularly that found in § 15(f)—gave the Board virtually unrestricted authority over parole decisions. Accordingly, we concluded that the statute as a whole could not "reasonably be taken to encourage the expectancy of the right to release." *Id.* at 277.

However, 1985 and 1987 amendments to the parole statute culled not only § 14A(e)'s "may recommend" language but also § 15(a)'s provision for gubernatorial approval of Board recommendations. As for § 15(f), the Court in *Allen* held that such a provision was of slight relevance to the question of whether an inmate enjoys a constitutionally cognizable liberty interest. *Allen*, 107 S.Ct. at 2420.

*shall* release a person on parole *during the tentative parole month* unless [factors warrant otherwise]." [4] § 8(e) of Texas's version, however, goes much further: It expressly states that "[t]he Board may revise a tentative parole month established under this subsection *at any time the board determines is proper.*" [5] This extra measure of discretion—nowhere to be found in the Nebraska or Montana statutes—effectively bestows upon the Board the unfettered authority to effect an eleventh hour parole postponement. As such, it would appear to eviscerate the "tentative parole date" of all its predictive value.[6]

The legislative background of the 1987 amendments does nothing to allay our doubts. In *Allen*, the Court thought it important that the history behind the Montana statute evinced a desire to require the Montana Parole Board to release certain inmates. *Allen*, 107 S.Ct. at 2422. Creel points to no such indicia of intent vis-a-vis the Texas statute, and our own efforts to uncover the same can be described only as unavailing. Quite the contrary: As noted in § 1 of the 1987 amendments, "[i]t is the final purpose of this article *to remove from existing statutes the limitations,* other than constitutionally, that have acted as barriers to an effective system of parole and supervision in the public interest." Acts 1987, 70th Leg., ch. 1101, § 1, eff. Sept. 1, 1987 (emphasis added). Were we to agree with Creel, we would assuredly flout this "final purpose" by construing § 8(a) so as to raise—not destroy—"limitations."

However, we need not decide whether the 1987 amendments created a liberty interest for some Texas inmates, for we reject Creel's claim not on the basis of the amendments' legislative past but on the basis of their legislative future. In the aftermath of *Allen*—which imputed constitutional heft to some uses of "shall" in a parole statute—the 71st Texas Legislature amended § 8(a), replacing the phrase "*shall* release" with the phrase "*may* re-

lease." [7] Consequently, to the extent the 1987 amendments ever led Creel to believe parole was in the offing, his "expectancy of release" ended on June 15, 1989, the effective date of the 1989 revision. *See Scales v. Mississippi State Parole Board*, 831 F.2d 565, 566 (5th Cir.1987) ("The distinction between whether a prisoner *shall* or *may* be given parole critically differentiates his expectation of release, and hence his rights under the due process clause of the fourteenth amendment") (emphasis in original). Creel's solitary grievance is the Board's May 1990 decision to deny him parole, a tentative release month of July 1990 notwithstanding. By any measure, therefore, Creel's liberty interest had expired more than a year before he allegedly bore the brunt of a constitutional violation. We thus refuse him relief.

### III

For the foregoing reasons, the judgment of the district court denying Creel's petition of habeas corpus is

AFFIRMED.

---

**4.** Emphasis added.

**5.** Emphasis added.

**6.** For the texts of the Nebraska and Montana statutes, respectively, *see Greenholtz*, 99 S.Ct. at 2106; *Allen*, 107 S.Ct. at 2420.

**7.** Emphasis added.