Ex parte Robert Ray MONTGOMERY.

No. 71919.

Court of Criminal Appeals of Texas.

Feb. 1, 1995.

Robert Ray Montgomery, pro se.

John Holmes, Dist. Atty., John Klassen, Asst. Dist. Atty., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PER CURIAM.

Applicant has filed this post-conviction application for a writ of habeas corpus pursuant

to Article 11.07, V.A.C.C.P., challenging the implementation of a Texas Department of Criminal Justice, Institutional Division, (hereinafter TDCJ–ID), policy which affects his parole eligibility. We filed and set this application to decide whether discontinuing the practice of restoring an inmate's forfeited good conduct time credits denies due process and equal protection of the law to those who had time credits forfeited but not restored when the policy went into effect.[1]

Applicant was convicted of possession of cocaine and his punishment assessed at confinement at TDCJ–ID for six years. While so confined, applicant was accused of a disciplinary violation. After a hearing, 365 days of applicant's accrued good conduct time were forfeited as a result of the violation. Pursuant to existing policy, a hearing was convened on November 18, 1993, by a unit classification committee, and it recommended that all of applicant's lost time be restored. The recommendation was sent for final approval to the Bureau of State Classification and Records, (hereinafter the Bureau). However, effective November 20, 1993, the Texas Board of Criminal Justice ordered TDCJ–ID to immediately discontinue the restoration of good conduct time forfeited as a result of disciplinary violations and directed that any time not restored before November 20th was permanently forfeited.[2] Applicant's paperwork was not processed until November 30, 1993, and, as a result, the committee's recommendation that the time be restored was denied "per board policy." Applicant probably knew of the committee's recommendation, but there is no evidence he was unaware the recommendation was not binding.[3]

Section 498.004 of the Government Code provides that as a sanction for an inmate's commission of an offense or disciplinary violation, the director of the institutional division "may forfeit all or any part of the inmate's accrued good conduct time ... [and] may restore good conduct time forfeited under this subsection subject to rules adopted by the institutional division." V.T.C.A. Gov't Code, § 498.005 provides:

At least annually, the board shall review the institutional division's rules relating to restoration of good conduct time that has been forfeited, the manner in which inmates are reclassified, and the manner in which additional good conduct time is awarded retroactively to inmates who have been reclassified. The board shall consider in its review whether the inmate overcrowding in the institutional division has decreased and whether it is necessary for purposes of decreasing overcrowding to classify inmates according to Section 498.002 to restore good conduct time under Section 498.004, or to award additional good conduct time retroactively to inmates who have been reclassified. If the board determines that overcrowding has decreased and it is not necessary to restore good conduct time or award additional good conduct time, it shall direct the institutional division to discontinue those practices.

Prior to the November 20th policy change, an administrative directive was issued by TDCJ–ID setting out the procedures for review of inmate classification and good-time restoration. This directive provided in part:

DISCUSSION: The procedures outlined below are designed to insure that all inmates, including those convicted of disciplinary offenses, are afforded timely reviews for promotional consideration and/or restoration of good conduct time credits

---

1. We have already determined that this policy does not constitute an ex post facto law. *Ex parte Hallmark*, 883 S.W.2d 672 (Tex.Cr.App. 1994).

2. This regulation is not published. Article 6252–13a, § 21(j), V.A.C.S. (repealed), exempts from the publication requirements of V.T.C.A., Gov't Code, § 2001, Subchapter B, all TDCJ and Board of Criminal Justice rules and internal procedures relating to inmates and others under their custody or control, as well as any actions taken pursuant to those rules or procedures. Although Art.

6252 was repealed and codified by the 73rd Legislature, subsection (j) was added during the same session. Section 311.031(c) of the Government Code provides that the repeal of a statute by a code does not affect amendments to the repealed statute made during the same legislative session.

3. Our recitation of the facts relies on the trial court's fact findings which are supported by documents from TDCJ–ID.

lost as a result of disciplinary conviction. However, inmates who are eligible for review in accordance with these procedures will not *automatically* be promoted to have their good conduct time credits restored as a result of the review process. Inmates must meet the criteria for promotion and restoration of good conduct time credits as established in the TDCJ–ID *Classification Plan.*

\*　　\*　　\*　　\*　　\*　　\*

B. *Inmates Assessed Major Penalties*

1. When an inmate is found guilty of a disciplinary offense resulting in a major penalty (that is, loss of good conduct time, reduction in class, placement in punitive segregation or retention in Line Class III), that finding of guilt *will* preclude the inmate from being reviewed or considered for promotion in class and/or restoration of good conduct time credits for a period of three months from the date of the offense.

a. The inmate *may* be reviewed upon maintenance of a clear conduct record for three months (disciplinary convictions resulting in major penalties will not preclude the review).

b. The inmate *must* be reviewed and considered for promotion in class and/or restoration of good conduct time credits within six months of the date of the inmate's most recent disciplinary offense resulting in a major penalty (that is the inmate must be reviewed upon maintenance of a clear conduct record for six months; disciplinary convictions resulting in minor penalties will not preclude the review).

2. The unit classification committee shall be responsible for the timely review for promotional consideration and/or restoration of good conduct time credits of inmates convicted of disciplinary offenses resulting in major penalties.

3. Recommendations for promotion and/or restoration of good conduct time credits for inmates convicted of disciplinary offenses resulting in a major penalty shall be submitted by the unit classification committee directly to the Bureau of Classification and Records Office on the appropriate form. The form must include the time earning class and custody level for which the inmate is being recommended, in conjunction with the restoration of good conduct time credits, if any.... Moreover, an inmate in Line Class II or III must be promoted in time earning status in order to be restored any lost good conduct time credits.... Inmates in Line Class I must have all lost good conduct time restored for them to be eligible for promotion *above* Line Class I.

A.D. 04.81 (rev. 1) (emphasis in original).[4]

■ A procedural due process analysis is two-tiered. The reviewing court must determine whether a protected liberty or property interest exists and, if so, decide whether sufficient procedural safeguards are employed to assure the deprivation of that interest is not arbitrary. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The interest at issue must amount to more than a "unilateral hope." *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), rather the claimant must show an entitlement. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). A liberty interest may arise from either the due process clause itself or from state statutes. *Hewitt v. Helms,* 459 U.S. at 468, 103 S.Ct. at 869, 74 L.Ed.2d at 685. In *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court acknowledged that even though the due process clause itself does not embody a right to release on parole, a state statute could create an entitlement to release on parole.

■ A statute will create an expectation or entitlement if it places "substantive limitations on official discretion" to deny the particular interest. *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909, 104 L.Ed.2d at 516, quoting *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). " 'Explic-

---

4. These regulations are also unpublished. See footnote 2.

itly mandatory language' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow" will create a liberty interest. *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910, 104 L.Ed.2d at 516. For example, mandatory language stating that a prisoner *shall* be released on parole *unless* certain enumerated factors are found to be present was held to create a presumption and, therefore, an expectation of release. *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). On the other hand, unfettered discretion shown by an absence of standards or mandatory prerequisites does not give rise to an entitlement. *Connecticut Board of Pardons v. Dumschat,* 452 U.S. at 466, 101 S.Ct. at 2465, 69 L.Ed.2d at 167.

■ According to V.T.C.A. Gov't Code, § 498.003, and Article 42.18, § 8, V.A.C.C.P., good conduct time applies only to eligibility for parole and release on mandatory supervision, but does not affect the length of an inmate's sentence. Because the due process clause itself does not include a right to earn good time credits, there exists no absolute right to have lawfully forfeited credits restored. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Therefore, we must determine whether the applicable statutes, rules, or regulations created in applicant an expectation that his forfeited credits would be restored.

■ The interest at issue in this case is restoration of applicant's lost time credits. It would be incorrect to designate the consideration for restoration as the interest at stake even though the former regulations specifically provided for such review. In *Olim v. Wakinekona,* the Supreme Court explained that the liberty guaranteed by the due process clause is substantive, and an individual cannot demand "process" for its own sake if no substantive interest exists. *Id.,* at 250, 103 S.Ct. at 1748, 75 L.Ed.2d at 823. The "process" due is the means by which the end of protecting a substantive liberty or property interest is achieved. Thus, an inmate is not entitled to a hearing to be considered for restoration unless a liberty interest in actual restoration is found.

■ Applicant argues that his review by the committee and their representations to him that his credits would be restored created a cognizable liberty interest. Even if committees had in the past consistently recommended restoration to eligible inmates and the Bureau invariably followed those recommendations, this practice would not create a liberty interest. Constitutionally protected entitlements do not arise from prior grants of discretionary clemency, but from written laws, rules or regulations. See *Connecticut Board of Pardons v. Dumschat,* 452 U.S. at 465, 101 S.Ct. at 2465, 69 L.Ed.2d at 166.

■ Administrative Directive 04.81 (rev. 1) contains explicitly mandatory language, in that it contains review deadlines, dictates the specific form the committee should forward to the Bureau, and sets out certain eligibility requirements for restoration. However, the mere presence of mandatory language will not create a liberty interest. The focus is on whether the language requires the decisionmaker to apply certain predicates before he may deprive an inmate of the interest in question. *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 464, n. 4, 109 S.Ct. at 1910, n. 4, 104 L.Ed.2d at 571, n. 4. Here, other than requiring that the inmate be promoted to a certain time earning status before his credits may be restored, the regulations do not direct the committee or the Bureau to consider any particular factors in deciding whether to restore. A lack of standards indicates a grant of unfettered discretion. Therefore, the administrative directive did not create a liberty interest in restoration.

■ In addition, Section 498.005 of the Government Code informs the inmate population that policies involving restoration of lost time credits are a function of prison population and are subject to discontinuation. Consequently, any interest in restoration is speculative as it is dependent on factors aside from applicant's conduct or the discretion of those who evaluate his behavior.

In *Creel v. Keene,* 928 F.2d 707 (5th Cir. 1991), cert. denied, 501 U.S. 1210, 111 S.Ct.

2809, 115 L.Ed.2d 982 (1991), the inmate claimed that mandatory language in Article 42.18 § 8(a), V.A.C.C.P., created a liberty interest in release on parole, and he was denied due process of law because he was not released during his scheduled "tentative parole month."[5] The Fifth Circuit held that the inclusion of language in section 8(e), authorizing the board to revise the tentative parole month "at any time the board determines is proper" stripped the tentative parole date of any "predictive value," negating any expectation of release created by subsection (a). In addition, the court noted that in 1989, the word "shall" in subsection (a) was replaced with "may." The court concluded, that even if the 1987 amendments created in Creel an expectation of release during his 1990 tentative parole month, that expectation ended when the statute was revised in 1989, a year before Creel was eligible to benefit from his claimed entitlement.

 In the instant case, as in *Creel*, any expectation in restoration applicant may have harbored from his reading of § 498.004 and the applicable TDCJ–ID directives was qualified by the § 498.005 provisions that the Board could order the practice to be discontinued at any time. Any lingering expectation applicant might have had in restoration disappeared when the Board exercised its authority to discontinue the practice.

 Having found no due process violation, we turn to applicant's equal protection argument. The equal protection clause of the Fourteenth Amendment requires that states treat similarly situated persons alike. *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). If a fundamental right is abridged or the differential treatment is based on a suspect classification, such as race, it will be subject to strict scrutiny; otherwise, it need only bear "some fair relationship to a legitimate public purpose." *Id.*, at 216–17, 102 S.Ct. at 2394–95, 72 L.Ed.2d at 799.

 Applicant complains that the new policy should not be applied to him because inmates who were recommended for restoration and whose paperwork was processed before the November 20th implementation date were granted their time credits. Since we have held that applicant's hope of receiving the credits is not a liberty interest under the due process clause, it is not a "fundamental right" for purposes of equal protection. In addition, the Board's means of applying the new policy is not based on a suspect classification. Therefore, we need only find a rational basis between the classification and the object of the policy.

 In *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980), the Supreme Court addressed the constitutionality of "line-drawing" employed to phase out benefits to certain employees. The court held that the line between who would and would not continue to receive the benefits was not arbitrary because it was based on an attempt to balance the relative equities of the employees. *Id.*, at 178–79, 101 S.Ct. at 461, 66 L.Ed.2d at 377–78. In this case the Board was forced to decide who would be subject to the new policy, and the line it drew balanced the equities of those who had been finally approved for restoration and those who had not. This was not an arbitrary distinction and it assured swift and uniform implementation of the new policy. The former policy permitting restoration was designed to alleviate overcrowding. Certainly, the State has a legitimate interest in requiring inmates to serve as much of their sentences as is feasible. Therefore, the State had a legitimate public interest in ceasing restoration when it was no longer necessary.

Applicant's rights to due process and equal protection of the law were not violated by immediate implementation of the new policy. Accordingly, the relief sought is denied.

---

**5.** At the time Creel committed the offense, Article 42.18, § 8(a) provided in part, "the Board shall release a person on parole during the tentative parole month established for the person unless the board determines that the person's release will increase the likelihood of harm to the public or that the person has failed to progress in the manner required of him by the Board in Subsection (e) of this section."