

# NUMBER 13-19-00468-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TIMOTHY DEAN STONE, TDCJ #1177762,**                          **Appellant,**

**v.**

**WARDEN FURR, ET AL.,**                          **Appellees.**

---

**On appeal from the 156th District Court
of Bee County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Justice Tijerina**

Acting pro se, appellant Timothy Dean Stone appeals the trial court's summary judgment in favor of appellees Warden Furr, et al. who are employees of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ).[1] By eleven

---

[1] Although Stone's original petition was filed by his trial counsel, Stone, acting pro se, filed an amended original petition. Stone proceeded in the trial court pro se thereafter.

issues, Stone contends that: (1) appellees (a) were not entitled to the "official capacity" and immunity defenses (issues one and two), (b) did not act reasonably, with discretion, or in good faith (issue three), (c) violated the prohibition against ex post facto laws (issue four), (d) violated his rights to due process and equal protection (issues five and six), and (e) committed ultra vires acts (issue eight); (2) "§ 1983 is proper for [his] claim" (issue seven); and (3) he is entitled to (a) temporary injunctive relief, (b) declaratory relief, and (c) a permanent injunction (issues nine through eleven).[2] We affirm.

## I. PERTINENT FACTS

As the parties do not dispute the facts, we summarize them as set out in their briefs. In 2003, Stone entered the Texas prison system to serve three consecutive fifty-year sentences which are to run concurrently with a twenty-year sentence. Stone will not be eligible for parole until 2028; however, once he is eligible for parole, he will then be required to serve two fifty-year consecutive sentences. Stone must serve twenty-five years day for day on each of the two fifty-year sentences as they are convictions for 3g offenses.[3] When Stone entered the prison system, he served ten years classified as a G-3 inmate.[4] Stone was automatically promoted to G-2 classification under the prison's prior

---

[2] Stone's first through third issues are challenges to the trial court's summary judgment granted on appellees' defensive issues. As we affirm the trial court's summary judgment on the merits of Stone's claims, whether appellees proved their defensive issues as a matter of law would not change the outcome of our analysis. Therefore, we will not address those issues as they are not dispositive of Stone's appeal. *See* TEX. R. APP. P. 47.1.

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(a) (listing offenses for which parole eligibility does not take into account good conduct time; formerly article 42.12, § 3g).

[4] According to the parties, TDCJ classifies inmates depending on the amount of time the inmate is required to serve, and an inmate classified as a G-2 inmate enjoys more freedom than an inmate who has a G-3 classification. Specifically, Stone explains that as a G-2 inmate he was housed in a dormitory style

classification rules after serving ten years, and he then enjoyed his G-2 status for three years. On September 1, 2016, however, the prison amended the classification rules to require that any inmate who would serve fifty or more years day for day could only be classified as a G-3 inmate. Stone was then reclassified as a G-3 inmate, and he was forced to move out of dormitory housing, returned to "building housing," and lost educational and employment opportunities.

Stone then sued appellees claiming that his reclassification "violated his Constitutionally guaranteed Right[s], under the Ex Post Facto, Due Process, and Equal Protection Clauses to the United States Constitution and, through extension, the Ex Post Facto, Due Course of Law, and Equal Rights provisions set forth in the Texas Constitution." Stone requested a declaration that his rights had been violated when he was reclassified and an injunction restoring his prior status as a G-2 inmate and barring the prison from reclassifying him in the future "[f]or any reason, other than a 'major' disciplinary action."

Appellees filed a motion for traditional summary judgment claiming that: (1) TDCJ had the right to change its classification system without running afoul of the United States Constitution; (2) TDCJ's classification policy change did not violate the constitutional prohibition on ex post facto laws; (3) Stone does not have a liberty interest in his classification; (4) a state agency following its own policies does not rise to a constitutional

---

room and was entitled to more educational and vocational opportunities than when he was classified as a G-3 inmate.

violation; (5) Stone cannot show an equal protection violation as he was not treated different than other similarly situated inmates; (6) Stone's allegations that he was unfairly and undeservedly reclassified does not amount to a constitutional violation; (7) Stone does not have an ultra vires claim against appellees because they followed the reclassification policy within their official capacities; (8) Stone's request for injunctive relief was fatally defective; (9) declaratory relief is barred by sovereign immunity; (10) Stone is not entitled to a jury trial for equitable relief; and (11) there are no material fact issues for a jury to determine. Stone did not respond to the motion for traditional summary judgment. The trial court granted the motion, and this appeal followed.

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden then shifts to the nonmovant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). We review a summary judgment de novo to determine whether a party's right to prevail is

4

established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007).

### III.    EX POST FACTO

By his fourth issue, Stone contends that appellees violated the ex post facto clause of the constitution by reclassifying him as a G-3 inmate. Appellees respond that the ex post facto clause only applies to legislative acts and is inapplicable here.

The ex post facto clause "provides simply that '[n]o State shall . . . pass any . . . ex post facto Law." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting U.S. CONST. art. I, § 10, cl. 1). Thus, "as the text [of the clause] makes clear," it is a limitation on the legislature's powers. *Id.* Here, the policy at issue, is not a law passed by the legislature. Thus, the trial court properly found that appellees had not violated the ex post facto clause as a matter of law, and summary judgment was proper on that claim. We overrule Stone's fourth issue.

## IV. CONSTITUTIONAL VIOLATIONS

By his fifth and sixth issues, Stone contends that his rights of due process of law and equal protection were violated when he was reclassified to G-3 inmate status. By his ninth issue, Stone contends that he is entitled to temporary injunctive relief on that same basis. On appeal and in their motion for summary judgment, appellees argue that Stone does not have a due process right to his classification and that his equal protection violation claim is baseless; therefore, he is not entitled to a temporary injunction.

## A. Due Process

It is well-settled that an inmate does not have a property interest in where he is housed. For example, the United States Supreme Court has stated that neither transferring an inmate from one prison to another nor a change in the conditions of confinement has a substantial adverse impact on the inmate sufficient enough to invoke the protections of the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976). The Court explained that, although the Due Process Clause forbids the State from depriving a person of his liberty and must be fully complied with when a person has been convicted, once convicted and constitutionally deprived of his liberty, the State may confine the person and "subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Id.*

Likewise, the Fifth Circuit has not recognized a protectable property or liberty interest in internal inmate classifications. *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996); *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988); *Wilson v. Budney*, 976

6

F.2d 957, 958 (5th Cir. 1992) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."). In *Pichardo v. Kinker*, the appellant claimed that he had a liberty interest in his classification because he had been segregated due to a finding that he was involved in a prison gang, which he consistently denied. 73 F.3d at 613. The *Pichardo* court explained that

> [t]he Supreme Court . . . held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Enriquez v. Bell*, No. 04-13-00077-CV, 2013 WL 6535142, at *4 (Tex. App.—San Antonio Dec. 11, 2013, pet. denied) (mem. op.) ("In assessing whether an internal inmate classification constitutes a constitutional right, the Fifth Circuit has held that prison systems have broad discretion in the internal classification of inmates, and courts should not interfere with classification decisions except in extreme circumstances." (citing *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971))).

In *Harper v. Showers*, the appellant complained that the prison's "classification system . . . employed denied him due process and equal protection of the laws." 174 F.3d 716, 719 (5th Cir. 1999). The Fifth Circuit determined that the trial court did not abuse its discretion by dismissing the appellant's claim" because "[i]nmates have no protectable property or liberty interest in custodial classifications." *Id.* (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.1998)).

7

In *Ex parte Montgomery*, the Texas Court of Criminal Appeals additionally explained what constitutes a liberty interest for purposes of the due process clause. 894 S.W.2d 324, 328 (Tex. Crim. App. 1995).[5] The court explained that "mandatory language stating that a prisoner *shall* be released on parole unless certain enumerated factors are found to be present was held to create a presumption and, therefore, an expectation of release" while "[o]n the other hand, unfettered discretion shown by an absence of standards or mandatory prerequisites does not give rise to an entitlement." *Id.* at 328. The court stated that the due process clause does not enumerate a right to good conduct time. *Id.* The court noted that the rule which allowed for the restoration of good conduct time could be changed at any time by the prison. *Id.*

Several appellate courts in Texas, including our own, have also determined that there is not a liberty interest in inmate classification. In *Barker v. Hutt*, a case which we find persuasive, the appellant complained that he was misclassified and improperly placed in administrative segregation. No. 11-10-00190-CV, 2012 WL 2862267, at *3 (Tex. App.—Eastland July 12, 2012, no pet.) (mem. op.). Citing the Fifth Circuit, the *Barker* court held that the trial court correctly determined "that there was not a reasonable probability that appellant would prevail in his litigation" because prisons have discretion in classifying the inmates and "[i]nmates have neither a protectable property nor liberty interest in custodial classification." *Id.* (citing *Pichardo*, 73 F.3d at 613; *Moody*, 857 F.2d

---

[5] Although not specifically relating to the complained-of classification in this cause, the court's reasoning is none-the-less pertinent to our analysis.

at 257). We agree that inmates do not have a protectable property or liberty interest in classification. *See Pichardo*, 73 F.3d at 613; *Moody*, 857 F.2d at 257.

In *Wilke v. Texas Department of Criminal Justice-C.I.D.*, our Court examined whether a disciplinary reprimand of an inmate deprived him of due process. No. 13-11-00698-CV, 2012 WL 2936273, at *1 (Tex. App.—Corpus Christi–Edinburg July 19, 2012, pet. dism'd w.o.j.) (mem. op.). Relying on *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997), we determined that Wilke's reprimand did not trigger the due process clause. 2012 WL 2936273, at *1. We concluded that "disciplinary sanctions such as reprimands or a reduction in class are merely changes in conditions of confinement and do not implicate due process concerns," and "[i]nmates have no protectable property or liberty interest in custodial classifications." *Id.*; *see Hamilton v. Williams*, 298 S.W.3d 334, 341 (Tex. App.—Fort Worth 2009, pet. denied) (concluding that "[c]ell restrictions and loss of commissary privileges are merely changes in the conditions of an inmate's confinement and do not implicate due process concerns."); *see also Enriquez*, 2013 WL 6535142, at *4 ("Thus, denial of a request for a particular internal TDCJ inmate classification does not constitute a violation of a constitutional right, and appellant's second claim is valid only if judicial review is provided by statute.").

We agree that *Madison* and the other cases cited above from the Fifth Circuit and the Court of Criminal Appeals support our conclusion that appellees established that as a matter of law Stone does not have a property interest in his classification requiring a due process analysis of his claims under these circumstances. 104 F.3d at 768. The

9

evidence showed that classification of inmates is discretionary and could be changed by the prison at will. Accordingly, Stone has not proven that he had a probable right to the relief sought or that he was entitled to a temporary injunction on this basis. We conclude that appellees facially established a right to summary judgment as a matter of law on Stone's request for a temporary injunction on the basis that his due process rights were violated. *See Centeq Realty, Inc.*, 899 S.W.2d at 197. We overrule Stone's fifth issue to the extent that he argues that his due process rights were violated, and we overrule Stone's ninth issue to the extent he argues that that he was entitled to a temporary injunction on that basis.

## B. Equal Protection

Having found no due process violation, we turn to Stone's argument that he was entitled to a temporary injunction because his equal protection rights were violated. The equal protection clause of the Fourteenth Amendment requires that states treat similarly situated persons alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). "The principle of equal protection guarantees that 'all persons' similarly situated should be treated alike." *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.). "Thus, to assert an equal protection claim, the deprived party must establish two elements: (1) that he was treated differently than other similarly-situated parties; and (2) he was treated differently without a reasonable basis." *Id.*; *see also Hoffman v. Moore*, No. 13-18-00617-CV, 2020 WL 1951539, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2020, no pet.) (mem. op.) ("[An inmate] plaintiff must allege he is being treated

10

differently from those whose situation is directly comparable in all material respects, . . . [and c]onclusory allegations of 'class of one' discrimination fail to state a claim.").

"'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Fernandez v. Tex. Dep't of Criminal Justice*, 341 S.W.3d 6, 14 (Tex. App.—Waco 2010, no pet.) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987); and citing *Williams v. Lara*, 52 S.W.3d 171, 193 (Tex. 2001)). It is the inmate's burden to prove the invalidity of a challenged regulation. *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

Stone complains that the new policy classifying him as a G-3 inmate should not be applied to him because he has not committed any violations while in prison. Because we have determined that an inmate's classification status is not a liberty interest under the due process clause, it is not a "fundamental right" for purposes of equal protection; therefore, appellees met their burden under the first prong. *See Sanders*, 36 S.W.3d at 224–25. Moreover, Stone has not shown that he was treated different from other similarly situated inmates. *See id.* Therefore, he has not properly stated a viable equal protection claim. *See id.*

Nonetheless, even assuming a constitutional violation occurred for argument's sake, as the classification system is not related to a suspect class, appellee only would have needed to have shown that a rational basis exists between the classification rule change and the object of the policy. *See Ex parte Montgomery*, 894 S.W.2d 324, 329

11

(Tex. Crim. App. 1995). In its summary judgment proof, appellees showed that this was not an arbitrary policy change. The former policy permitting a change in status from G-3 to G-2 after ten years was changed due to security risks associated with inmates that are serving sentences of more than sixty years. The State has a legitimate penological interest in ensuring the safety of its prisons. *See Fernandez*, 341 S.W.3d at 14 (concluding that safety of prisons is a legitimate penological interest); *see also Balawajder v. Tex. Dep't of Criminal Justice Institutional Div*., 217 S.W.3d 20, 27–28 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("Prison and jail administrators have a compelling interest to establish 'necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" (quoting *Diaz v. Collins*, 114 F.3d 69, 73 (5th Cir.1997))); *Richards v. State*, No. 10-07-00124-CR, 2008 WL 5473044, at *8 (Tex. App.—Waco Dec. 31, 2008, pet. ref'd) (mem. op., not designated for publication) (stating that "[m]aintaining security in prisons is arguably a legitimate state interest" and finding no merit in the appellant's claim of an Equal Protection Clause violation when he was charged pursuant to a statute making his possession of a cell phone in prison a criminal offense); *Thompson v. Stansberry*, No. 12-01-00052-CV, 2002 WL 1362453, at *4 (Tex. App.—Tyler June 21, 2002, pet. denied) (mem. op.) (concluding that there is a rational connection between the penological safety and security interest of a prison and the forced strip searches of male inmates by female officers). Therefore, we conclude that the State has a legitimate public interest in determining inmate classification based on length of sentences and the security risks

associated with inmates serving long sentences.

Thus, because Stone's right to equal protection of the law was not violated by implementation of the new policy, the trial court properly granted appellees' motion for summary judgment on the basis that Stone was not entitled to a temporary injunction. Accordingly, we overrule Stone's sixth issue complaining that his right to equal protection was violated and his ninth issue to the extent that he argues he was entitled to a temporary injunction on that basis.

As we have found that no constitutional violation occurred in this case, Stone's seventh issue complaining that the trial court improperly granted summary judgment dismissing his § 1983 claim must also fail. *See Berry v. Tex. Dep't of Criminal Justice*, 864 S.W.2d 578, 580 (Tex. App.—Tyler 1993, no writ) (providing that two elements must be shown to exist for an inmate's § 1983 claim to prevail: (1) the complained-of conduct was committed by a person acting under color of state law and (2) the person was deprived of rights, privileges, or immunities secured by the Constitution or the laws of the United States); *see also* 42 U.S.C. ANN. § 1983. Accordingly, we overrule Stone's seventh issue.

## V. ULTRA VIRES

By his eighth issue, Stone contends that appellees acted ultra vires and by his tenth issue, Stone contends he was entitled to a permanent injunction preventing appellees from ever changing his classification because they acted ultra vires. Appellees respond that they followed the procedures set out by the policy.

"To obtain permanent-injunctive relief, a party must show (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law." *Livingston v. Livingston*, 537 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

A government official acts ultra vires when the official acts outside the official's properly granted authority. *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016) (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 393 (Tex. 2011)). "'To fall within this ultra vires exception,' however, 'a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.'" *Id.*

The summary judgment evidence in this case shows that appellees reclassified Stone pursuant to the prison's policies, which are included in the Classification Plan and the Unit Classification Committee (UCC) Procedure Manual 2.00. There is no evidence that appellees failed to follow the UCC's manual, and Stone makes no such complaint. Instead, Stone's argument hinges on a finding that appellees' act of reclassifying him as a G-3 inmate was unconstitutional. However, as explained above, we have concluded that the trial court properly granted summary judgment because appellees did not violate Stone's due process and equal protection rights. Therefore, appellees proved as a matter of law that they did not act ultra vires, and therefore they did not commit a wrongful act. Accordingly, the trial court properly granted appellees' motion for summary judgment on

14

the basis that Stone was not entitled to a permanent injunction. We overrule Stone's eighth and tenth issues.

By his eleventh issue, as we understand it, Stone contends that he is entitled to a declaratory judgment establishing his right to protection from ultra vires acts by the appellees, which he describes as constitutional protections. Appellees respond that they did not act ultra vires; therefore, Stone is not entitled to declaratory relief.

Having found that appellees did not act ultra vires, we conclude that the trial court properly granted appellees' motion for summary judgment on Stone's request for declaratory judgment. We overrule Stone's eleventh issue.

## VI.    CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
25th day of March, 2021.

15