Jose GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00229–CR.

Court of Appeals of Texas,
San Antonio.

May 6, 1998.

Discretionary Review Refused
Sept. 16, 1998.

 

Juan Martinez Gonzales, Law Office of Juan Martinez Gonzales, New Braunfels, for appellant.

Joe Frank Garza, Dist. Atty., Armando Barrera, Barrera & Barrera Law Firm, Alice, for appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Jose Garza was convicted of murder. In fourteen points of error, he raises complaints regarding the factual sufficiency of the evidence, the jury charge, and the trial court's granting of the State's motion to change venue without notice or a hearing. Although we disapprove of the trial court's *ex parte* granting of the motion to change venue, we affirm the conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

Sixteen-year-old Jose Garza was driving his mother's car along the streets of Falfurrias, Texas on the evening of March 14, 1995. With him were two friends, his brother, and, fatefully, a .25–caliber handgun. Thirteen-year-old Joel Ramirez threw a bottle at the car. Garza stopped, opened the door, and fired once. Ramirez died later that evening as a result of the gunshot wound.

The juvenile court waived its jurisdiction, and Garza was indicted in Brooks County for Ramirez's murder. On the State's motion, the trial court later transferred the case to Jim Wells County. A jury there convicted Garza of murder and assessed his punishment at confinement for thirty-five years.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

In his eighth point of error, Garza asserts that the evidence is factually insufficient to support the conviction.

In reviewing the factual sufficiency of the evidence of the elements of an offense, a court of appeals must review all the evidence as a whole, without viewing it in the light most favorable to either party. *See*

*Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *see also Cain v. State,* 958 S.W.2d 404, 407–08 (Tex.Crim.App.1997) (reiterating the *Clewis* standard). The court may set aside a verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis,* 922 S.W.2d at 129. A court of appeals is not free to reweigh the evidence and set aside a jury verdict merely because the court believes a different result is more reasonable. *See Cain,* at 407; *Clewis,* 922 S.W.2d at 135. "[T]he appellate court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice." *Cain,* at 407. In particular, the "weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor." *Id.* at 408–09.

■ Garza was indicted for murder as defined in section 19.02(b)(2) of the Texas Penal Code. The State charged that, with the intent to cause serious bodily injury, Garza committed an act clearly dangerous to human life that caused the death of Joel Ramirez. The only element of this offense that is in dispute is whether Garza intended to cause serious bodily injury. Garza presented evidence that he pointed the gun toward the ground, that he fired it only in an attempt to scare Ramirez, and that the bullet ricocheted off the ground.

Garza testified that while he was driving his brother, Daniel, and his friends, Onofre and Fidel, to Onofre's house, Ramirez threw a bottle, which hit the driver's side of the front windshield, causing the windshield to crack. Garza then stopped the car, opened the door, stuck one foot out, and fired a shot from his mother's .25–caliber pistol, which had been stored under the car seat. He stated that he "shot like at an angle down," that he did not aim at Ramirez, that he did not intend to hit Ramirez, and that he only meant to scare him. After firing the gun, he proceeded to drive to Onofre's house, not realizing that he had shot Ramirez. When they left Onofre's house, they went back to his house, where he told his mother that

Ramirez had thrown a bottle at her car and that he had fired her gun.

Garza's mother testified that she left her gun in the car after she returned home from work and before Garza departed in the car. She stated that when Garza and his companions returned from Onofre's house, Garza told her about the bottle-throwing incident and that he had fired her gun toward the ground to scare Ramirez.

Daniel and Fidel corroborated Garza's version of events. They also testified that Ramirez was eighty-five feet away when Garza fired the gun. Nicole Rodriguez, a bystander who knew both Garza and Ramirez, testified that after the bottle hit the car, she saw Garza point the gun down and fire it.

Richard Earnest, the senior fire arms examiner for the Tarrant County Medical Examiner's Criminalistics Laboratory, testified for the defense. He stated that ricocheted bullets are flattened on one side and usually have traces of whatever they strike. He had examined the bullet that killed Ramirez and found that one side of the bullet had been obliterated by striking something very hard. The bullet was missing eight percent of its original weight. While examining the bullet under a microscope at a magnification of up to forty times, he found trace evidence of a material that was consistent with asphalt, as well as microscopic granules of sand, on the bullet. These findings and the markings on the bullet indicated that the bullet struck asphalt. Earnest did not find any bone imbedded in the bullet, and the damage on the bullet was inconsistent with the type of damage one would find on a bullet that struck bone. He stated that a bullet loses some of its energy when it ricochets off a surface. Nevertheless, he opined that a bullet fired from a .25–caliber pistol could still have enough energy to kill someone after ricocheting off of asphalt.

The State's evidence contradicted the defense's theory. Onofre testified that Garza took the gun from his house and tucked it into the front of his pants before they left on the evening in question. He also stated that after Ramirez threw the bottle at the car, Garza stopped the car and fired the gun in the direction of Ramirez. Onofre testified

that Garza asked him to say that the bullet ricocheted. Humberto Cruz, Ramirez's cousin, testified that he was present when the bottle-throwing incident occurred and that he saw Garza shoot at Ramirez. He also stated that there was no ricochet.

The State also presented the testimony of a medical examiner and a firearms examiner. Dr. Joseph Rupp, the medical examiner, testified regarding the autopsy report prepared by another doctor. He stated that the distortion in the bullet was consistent with it having hit a bone after it entered Ramirez's body. According to Rupp, the distortion in the bullet was not consistent with a ricochet. He also testified that the bullet went straight into Ramirez, rather than from an angle, and that the entrance wound was symmetrical, rather than jagged.

Edward McKinstry, the firearms and tool mark examiner for the Corpus Christi Police Department, testified that he examined the bullet that killed Ramirez. According to McKinstry, the bullet was not missing very much of its original weight. He testified that it was not probable that the bullet would have had sufficient energy to kill Ramirez if it had ricocheted off the asphalt before hitting him. He did not see any particles on the bullet that indicated it hit asphalt. Having examined the bullet under a microscope magnifying the bullet up to thirty times its size, he was confident he would have seen such particles if any were there.

It was within the province of the jury to resolve the conflicts in the evidence in this case. *See Cain,* at 408–09. While there was evidence supporting the defense's theory of the case, that evidence was not so overwhelming as to render the verdict clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 129. We overrule Garza's eighth point of error.

## JURY CHARGE

In his first seven points of error, Garza complains of errors in the jury charge.

1. The term "dynamite charge" usually refers to a charge given to a deadlocked jury in an attempt to remove obstacles to the return of a unanimous verdict. *See Griffith v. State,* 686 S.W.2d 331,

## A. Intent Charge

■ In his first point of error, Garza argues that the jury instruction on intent shifted the burden of proof to him. The charge defined "intent" as follows: "A person acts intentionally or with intent with respect to a result of his conduct when it is his conscious objective or desire to cause the result." This definition does not allude to any allocation of the burden of proof and it closely tracks the statutory definition of "intent." *See* TEX. PENAL CODE ANN. § 6.03(a) (Vernon 1994). The trial court also instructed the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the Defendant," that "[t]he law does not require a Defendant to prove his innocence or produce any evidence at all," and that "[t]he State has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the Defendant."

In *Dowden v. State,* the court of criminal appeals rejected an argument that a jury instruction tracking the language of section 6.03(a) of the Penal Code unconstitutionally shifted the burden of proof onto the defendant. *See* 758 S.W.2d 264, 274–75 (Tex.Crim. App.1988). Like the jury charge in this case, the jury charge in *Dowden* included proper instructions on the burden of proof. *See id.* at 275. Following *Dowden,* we conclude that the instruction on intent did not shift the burden of proof onto Garza. *See Bethune v. State,* 821 S.W.2d 222, 228 (Tex.App.—Houston [14th Dist.] 1991), *aff'd,* 828 S.W.2d 14 (Tex.Crim.App.1992). We overrule the first point of error.

## B. Dynamite Charge

■ In his second point of error, Garza argues that the trial court improperly included a "dynamite charge" in the initial charge at the guilt phase of trial.[1] The court instructed the jury as follows:

332 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *see also Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

In order to return a verdict, each juror must agree thereto, but jurors have a duty to consult with one another and to deliberate with a view of reaching an agreement, if it can be done without violence to individual judgment.

Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors.

In the course of this course of deliberations, a juror should not hesitate to reexamine his own views and change his opinions if convinced it is erroneous [sic]. However, no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

Garza argues that the language "deliberate with a view of reaching an agreement" should not have been included in the charge because: (1) it is a misstatement of law; (2) it is an improper appeal from the bench for a verdict; (3) it overemphasizes the importance of reaching a verdict; (4) it is coercive; (5) it fails to give the defendant the benefit of reasonable doubt; and (6) it fails to give the defendant the benefit of the presumption of innocence and the burden of proof.

Both the United States Supreme Court and the Texas Court of Criminal Appeals have approved charges containing language similar to "deliberate with a view of reaching an agreement" when a jury has indicated that it is deadlocked. *See Lowenfield v. Phelps*, 484 U.S. 231, 235, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (approving charge that stated, in part, "it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment"); *Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex.Crim.App.1973) (approving charge that stated, in part, "you are instructed to continue deliberations in an effort to arrive at a verdict which is acceptable to all members of the jury").

Garza does not complain that the instruction was particularly coercive in this case because it was given in the initial charge instead of after the jury was deadlocked, and there is no reason to conclude that the instruction would be more coercive in this situation. Indeed, some courts have determined that this type of instruction is less coercive if included in the initial jury charge. *See Loving v. State*, 947 S.W.2d 615, 619 (Tex.App.—Austin 1997, no pet.) (citing cases); *but see Love v. State*, 909 S.W.2d 930, 937 (Tex.App.—El Paso 1995, pet. ref'd) (discouraging the inclusion in the initial jury charge of an instruction informing the jury of the consequences of a mistrial).

Assuming that the language "deliberate with a view of reaching an agreement" could have a coercive effect standing alone, the remainder of the jury charge, including the admonishment that "no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict," eliminated any potential for coercion. We therefore conclude that the trial court did not err in giving the instruction and we overrule the second point of error.

## C. Failure to Charge on Accident

 In his sixth point of error, Garza argues that the trial court erred in refusing his request for a jury instruction on "accident." Although accident is not a defense under the Texas Penal Code, it is encompassed within the Code's general culpability requirements. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982). The Code provides that a person may commit an offense only if the person voluntarily engages in conduct. *See* TEX. PENAL CODE ANN. § 6.01(a) (Vernon 1994). Therefore, if the issue is raised by the evidence, a jury may be instructed that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct of which he is accused. *See Williams*, 630 S.W.2d at 644. But conduct is not rendered involuntary merely because an accused does not intend the result of the conduct. *See Adanandus v. State*, 866 S.W.2d 210, 230 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

Here, the evidence does not raise an issue regarding the voluntariness of Garza's firing a shot from the gun. Although Garza claims he did not intend the shot to hit Ramirez, it is undisputed that he purposefully fired the gun. Accordingly, the trial court did not err in refusing to charge the jury on accident. We overrule the sixth point of error.

### D. Remaining Failures to Charge

■ In his third, fifth, and seventh points of error, Garza argues that the trial court erred in failing to instruct the jury on the definitions of anger, rage, resentment, and terror, and on the issues of sudden passion and diminished capacity. In his fourth point of error, he argues that the trial court erred by failing to instruct the jury on the lesser-included offense of aggravated assault. These issues are not preserved for review because Garza did not request the instructions or object to the trial court's failure to include them in the charge. *See Posey v. State,* 966 S.W.2d 57 (Tex.Crim.App.1998) (holding that a defensive issue is not applicable to the case unless the defendant timely requests the issue or objects to the omission of the issue in the charge); *Thomas v. State,* 701 S.W.2d 653, 656 (Tex.Crim.App.1985) (refusing to consider contention that court erred by failing to submit lesser included offense because appellant did not request the instruction); *Hammond v. State,* 942 S.W.2d 703, 709 (Tex.App.—Houston [14th Dist.] 1997, no pet.) ("As appellant made no request for the instruction on the lesser included offense, we do not consider it on appeal."). We overrule the third, fourth, fifth, and seventh points of error.

### CHANGE OF VENUE

In his final six points of error, Garza argues that the trial court erred by granting the State's motion to change venue. The Texas Code of Criminal Procedure authorizes a trial court to change venue on the State's motion in certain circumstances. The Code provides:

> Whenever the district or county attorney shall represent in writing to the court before which any felony or misdemeanor case punishable by confinement, is pending, that, by reason of existing combinations or influences in favor of the accused, or on account of the lawless condition of affairs in the county, a fair and impartial trial as between the accused and the State cannot be safely and speedily had; or whenever he shall represent that the life of the prisoner, or of any witness, would be jeopardized by a trial in the county in which the case is pending, the judge shall hear proof in relation thereto, and if satisfied that such representation is well-founded and that the ends of public justice will be subserved thereby, he shall order a change of venue to any county in the judicial district in which such county is located or in an adjoining district.

TEX.CODE CRIM. PROC. ANN. art. 31.02 (Vernon 1989).

In this case, the record reflects that on October 18, 1995, the State filed a motion to change venue, asserting that because of combinations and influences in Brooks County in favor of Garza, a fair and impartial trial could not be safely and speedily had in that county. The motion was not sworn and no exhibits were attached to support the assertion made in the motion. The next day, October 19, 1995, the trial court signed an order granting the State's motion and transferring the case to Jim Wells County. Although the order recites that the court heard argument and evidence on the motion, the State concedes that no hearing was actually held.

### A. Failure to Comply With Article 31.03

■ In his tenth point of error, Garza argues that the trial court erred in granting the State's motion to change venue because the State failed to file affidavits supporting its assertion that a fair trial could not be had in Brooks County. He relies on cases that construe the statute allowing a change of venue on the defendant's motion. *See, e.g., Stuart v. State,* 456 S.W.2d 129 (Tex.Crim. App.1970). That statute, unlike article 31.02, specifically requires affidavits to be attached to the motion for change of venue. *See* TEX.CODE CRIM. PROC. ANN. art. 31.03(a) (Vernon 1989) ("A change of venue may be granted ... on the written motion of the defendant, supported by his own affidavit and the

affidavit of at least two credible persons . . . ."). Because article 31.02 does not require the State to attach affidavits to its motion, the State was not required to provide them. *See* 41 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE & PROCEDURE § 25.52 (Texas Practice 1995). Accordingly, we overrule the tenth point of error.

### B. Failure to Comply With Articles 31.01 and 31.04

 In his eleventh and thirteenth points of error, Garza argues that the trial court violated articles 31.01 and 31.04 of the Code of Criminal Procedure by failing to afford him notice and a hearing before granting the State's motion to change venue. Article 31.01 provides:

> Whenever in any case of felony or misdemeanor punishable by confinement, the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending, he may, *upon his own motion,* after due notice to [the] accused and the State, and after hearing evidence thereon, order a change of venue to any county in the judicial district in which such county is located or in an adjoining district, stating in his order the grounds for such change of venue. The judge, upon his own motion, after ten days notice to the parties or their counsel, may order a change of venue to any county beyond an adjoining district. . . .

TEX.CODE CRIM. PROC. ANN. art. 31.01 (Vernon 1989) (emphasis added). By its express terms, this statute applies only when the court changes venue on its own motion. Because the court in this case changed venue on the State's motion, the specific notice and hearing requirements of article 31.01 did not apply.

Article 31.04 provides:

> The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant.

TEX.CODE CRIM. PROC. ANN. art. 31.04 (Vernon 1989). This statute comes into play when a defendant has filed a motion to change venue with the supporting affidavits required by article 31.03. When the defendant files such a motion and affidavits, and the State files a controverting affidavit under article 31.04, the trial court must conduct a hearing to resolve the factual disputes raised by the affidavits. *See Burks v. State,* 876 S.W.2d 877, 890 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Foster v. State,* 779 S.W.2d 845, 855 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990). In this case, neither Garza nor the State filed affidavits regarding the motion to change venue. Therefore, the article 31.04 hearing requirement was not triggered.

Because articles 31.01 and 31.04 do not apply under the circumstances of this case, we overrule the eleventh and thirteenth points of error.

### C. Failure to Comply With Article 31.02 and Due Process

In his ninth and twelfth points of error, Garza argues that the trial court violated article 31.02 of the Texas Code of Criminal Procedure and his right to due process by granting the State's motion without notice and an evidentiary hearing. The State responds that notice and a hearing were unnecessary because article 31.02 does not require the State to present evidence to support a motion to change venue and Garza had no constitutional right to contest the change of venue.

#### 1. Statutory Violation

 The State's argument that article 31.02 does not require it to present evidence is contrary to the text of the statute, which expressly states in mandatory language that "the judge shall hear proof." *See id.* § 25.54 (opining that upon the filing of a motion to change venue by the State, the judge should set the motion for a hearing and require the State to prove the allegations in the motion by a preponderance of the evidence). We therefore conclude that the trial court erred

by failing to conduct an evidentiary hearing before granting the State's motion.

## 2. Due Process Violation

As stated above, Garza also argues that the trial court's action violated his right to due process. Procedural due process requirements apply only to interests protected by the state or federal constitution. *See Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir.1986); *University of Texas Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995). A constitutionally protected liberty interest may arise from either a constitutional provision or a state statute. *See Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex.Crim.App. 1995). Therefore, to determine whether Garza was entitled to procedural due process in this circumstance, we must examine the relevant constitutional and statutory provisions.

The Sixth Amendment to the United States Constitution grants criminal defendants a right to trial by jurors from the locality where the crime was committed. *See Cook v. Morrill*, 783 F.2d at 595. But this right, commonly referred to as the right to trial in the vicinage, does not apply in state prosecutions. *See id.; Cox v. State*, 8 Tex. Ct.App. 254, 284–85 (1880); *Bath v. State*, 951 S.W.2d 11, 19 (Tex.App.—Corpus Christi 1997, pet. ref'd). Criminal defendants also have no state constitutional right to trial in the vicinage. *See Cox*, 8 Tex. Ct.App. at 285; *see also* 41 Dix & Dawson, *supra*, § 25.17. The Texas Constitution grants criminal defendants the right to a trial by an impartial jury, without specifying that the trial must be held in any particular county. *See* Tex. Const. art. 1, § 10. The constitution further provides that "[t]he power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose." *Id.* art. III, § 45.

Turning to the relevant statutes, the legislature has provided that the proper venue for a criminal prosecution is generally the county in which the offense was committed. *See* Tex.Code Crim. Proc. Ann. art. 13.18 (Vernon 1977); *see also* 40 Dix & Dawson, *supra*, § 2.41. Nothing in the venue statutes purports to confer on defendants a substantive right to be tried in the county in which the offense was committed. Acting pursuant to the authority conferred by the state constitution, the legislature has enacted statutes allowing venue to be changed. *See* Tex.Code Crim. Proc. Ann. arts. 31.01–.03 (Vernon 1989). Two of these statutes allow the trial court to change venue over the defendant's objection, either on the court's own motion or on the State's motion. *See id.* arts. 31.01–.02.

Although there are few published decisions involving article 31.02, cases construing article 31.01 demonstrate that a criminal defendant has no constitutionally protected interest in being tried in the county where venue is initially laid. Article 31.01, which took effect in 1966, authorizes a court to change venue whenever it "shall be satisfied that a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending." The predecessor to this statute did not require that notice be given to the defendant or that a hearing be conducted before the court changed venue. *See* Act of August 21, 1876, 15th Leg., 1876 Tex. Gen. Laws 274; *Berwick v. State*, 149 Tex.Crim. 372, 194 S.W.2d 768, 769–70 (1946); *Cox*, 8 Tex. Ct.App. at 283. Nevertheless, the statute survived several constitutional challenges. *See Martin v. Beto*, 397 F.2d 741, 747 (5th Cir.1968), *cert. denied*, 394 U.S. 906, 89 S.Ct. 1008, 22 L.Ed.2d 216 (1969); *Allen v. State*, 488 S.W.2d 460, 461 (Tex.Crim.App. 1972); *Cox*, 8 Tex. Ct.App. at 283.

The current version of the statute requires the court to give notice to the defendant and the State and to hear evidence on the *sue sponte* motion. *See* Tex.Code Crim. Proc. Ann. art. 31.01. But the court may base its decision on facts within its judicial knowledge and need not present evidence to support its motion. *See Cook v. Morrill*, 783 F.2d at 595; *Cook v. State*, 667 S.W.2d 520, 522–23 (Tex.Crim.App.1984). In construing this statute, the court of criminal appeals has held that a defendant has no "tactical" interest in having his case tried in a particular county simply because he would prefer to

have the case tried there. *See Aranda v. State,* 736 S.W.2d 702, 705 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). Like its predecessor statute, article 31.01 has withstood constitutional challenges. *See Cook v. Morrill,* 783 F.2d at 596; *Cook v. State,* 667 S.W.2d at 523.

In *Cook v. State,* the court of criminal appeals rejected an argument that the trial court's consideration of matters outside the record constituted a denial of due process. *See* 667 S.W.2d at 524. The court relied on cases upholding the constitutionality of the predecessor statute. *See id.* at 521 n. 1, 523, 524 & n. 5. Unhappy with the court of criminal appeals' decision, the defendant sought federal habeas relief. He argued that the trial court denied him procedural due process by considering evidence outside the record and by not allowing him to confront and cross-examine witnesses at the hearing. *See Cook v. Morrill,* 783 F.2d at 596. The Fifth Circuit rejected these arguments, stating, "[P]rocedural due process requirements apply only to protected fourteenth amendment interests. Since the sixth amendment venue right does not apply to the states, Cook has no protected fourteenth amendment right requiring the protection of due process." *Id.* (citation omitted).

▓▓▓▓ These cases establish that neither constitutional provisions nor the venue statutes grant criminal defendants a constitutionally protected interest in being tried in the county in which the crime was committed. We also conclude that the language of article 31.02 is not sufficient to confer such an interest. The mere fact that the statute requires the trial judge to "hear proof" when the State moves to change venue does not create a liberty interest because an "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona,* 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (mere fact that regulations required a particular kind of hearing was insufficient to create liberty interest in subject of hearing). "Process is not an end in itself;" rather, "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a

legitimate claim of entitlement." *Id.* at 250, 103 S.Ct. 1741.

▓▓▓▓ We recognize, however, that it is possible for the legislature to create a liberty interest by placing substantive limitations on official discretion to deprive a person of the interest. *See id.* at 249, 103 S.Ct. 1741. This occurs when a statute sets forth substantive predicates to govern decisionmaking and contains explicitly mandatory language requiring a particular result upon a finding that the substantive predicates have been met. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462–64, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). For example, a state may confer on prisoners a protected interest in being released on parole by providing that they shall be released on parole unless specific factors are found to be present. *See Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *see also Montgomery,* 894 S.W.2d at 328; *but see Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 2300 & n. 5, 132 L.Ed.2d 418 (1995) (abandoning the analysis followed in *Olim, Allen,* and *Thompson* in cases dealing with prison regulations and returning to a focus on the nature of the deprivation rather than on the language of regulations). But when a decisionmaker's discretion is unfettered by statutory standards or prerequisites, no liberty interest arises. *See Olim,* 461 U.S. at 250, 103 S.Ct. 1741; *Montgomery,* 894 S.W.2d at 328.

▓▓▓ Applying these concepts here, we observe that article 31.02 sets forth substantive predicates upon which the State's motion to change venue must be based, *i.e.,* combinations or influences in favor of the accused, lawless conditions in the county, or danger to the defendant or a witness. But article 31.01 authorizes a trial judge to order a change of venue, over the defendant's objection, *"[w]henever* ... the judge ... [is] satisfied that a [fair] trial ... cannot, *from any cause,* be had in the county in which the case is pending" (emphasis added). Construing this language, the court of criminal appeals has held that " 'it would be difficult to envisage a state of facts by which this court would be warranted in finding that an abuse of discretion has occurred.' " *Cook v. State,* 667

S.W.2d at 523 (*quoting Spriggs v. State,* 163 Tex.Crim. 167, 289 S.W.2d 272, 273 (1956)). Thus, assuming that article 31.02, standing alone, would be sufficient to create an expectation that venue would not be changed unless certain predicates were established, article 31.01 negates any such expectation. *Cf. Montgomery,* 894 S.W.2d at 328 (holding that any expectation created by one statute regarding the restoration of a prisoner's lost good-conduct-time credits was negated by another statute stating that policies involving restoration of lost credits were subject to discontinuation).

In sum, we conclude that Garza had no constitutionally protected interest in being tried in a particular county. Thus, although the trial court clearly violated article 31.02 by failing to conduct a hearing, the court did not deprive Garza of due process.

Having concluded that the trial court erred, but that the error is not one of constitutional dimension, we must determine whether the error affected Garza's "substantial rights." Tex.R.App. P. 44.2(b). From our analysis of Garza's due process argument, it is clear that Garza did not have a substantial interest in having his case tried in the county in which the crime occurred. And, as we have also noted, Garza cannot claim a tactical interest in having his case tried in Brooks County. *See Aranda,* 736 S.W.2d at 705. Accordingly, we conclude that the only substantial right of Garza that could have been affected by the change of venue is his right to a fair trial. Having reviewed the record, we conclude that Garza received a fair trial in Jim Wells County. The trial was conducted in Alice, which is only 36 miles from Falfurrias, the city where the shooting occurred. *See Lewis v. State,* 674 S.W.2d 423, 426 n. 1 (Tex.App.—Dallas 1984, pet. ref'd) (court of appeals may take judicial notice of distance between two geographic locations). There is no indication

that the change of venue hampered Garza's ability to put forth his defense, such as might occur if the trial had been moved to a distant county. The voir dire of the jury panel does not reveal that the potential jurors were biased against Garza. *Cf. Bell v. State,* 938 S.W.2d 35, 46 (Tex.Crim.App.1996) (when defendant moves for change of venue, trial court may use voir dire to help gauge the community climate), *cert. denied,* —— U.S. ——, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997). Finally, if Garza had concerns about being tried in Jim Wells County, he could have filed a motion for change of venue, asserting that a fair trial could not be had in that county. *See* Tex.Code Crim. Proc. Ann. art. 31.03. No such motion was filed. *See Berwick,* 194 S.W.2d at 770 (noting, in considering whether a change of venue harmed a defendant, that the defendant did not move to change venue after the trial court changed venue on its own motion). We conclude that the improper change of venue did not affect Garza's right to a fair trial.[2]

## D. Jurisdiction

In his fourteenth and last point of error, Garza argues that the trial court lacked jurisdiction because of the erroneous change of venue. Specifically, he asserts that the trial court violated article V, section 7, and article I, section 29, of the Texas Constitution.

Article I, section 29, provides that the state bill of rights is excepted out of the general powers of government and that all laws contrary to the bill of rights are void. While Garza cites this provision, he does not indicate how the change of venue violated any provision of the bill of rights. From our discussion of the due process issue, it is clear that no provision of the bill of rights was violated.

2. Our resolution of Garza's challenge to the change of venue should not be construed as condonation of the trial court's *ex parte* issuance of the change-of-venue order. We can divine no reason why the trial court would not follow the statute. Neither clogged dockets nor the convenience of the judge justifies actions that call into question the integrity of the judicial process. In light of this case and other cases recently

brought before this court, we are becoming concerned about arbitrary actions and rulings that create the appearance of a pattern of unfair treatment. *See, e.g., Davila v. State,* 961 S.W.2d 610, 616 (Tex.App.—San Antonio 1997, no pet.) (when a defendant successfully attacked the punishment assessed against him, the trial judge vindictively increased the defendant's punishment from 45 years to 75 years on remand).

Article V, section 7, requires courts to conduct proceedings "at the county seat of the county in which the case is pending, except as otherwise provided by law." This requirement is jurisdictional. *See Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App. 1995). In this case, after the trial court signed the order transferring venue to Jim Wells County, the case was pending in that county rather than Brooks County. The trial court thus had jurisdiction to conduct proceedings in Jim Wells County.

Garza seems to assume that because the trial court erred in changing venue, the case was never actually transferred to Jim Wells County. This assumption confuses the concepts of venue and jurisdiction. The failure to comply with venue statutes does not deprive a court of jurisdiction. *See Ex parte Watson,* 601 S.W.2d 350, 352 (Tex.Crim.App. 1980) ("[S]trictly as a matter of jurisdiction, a district court may try any case in which the offense takes place within the State [although] in a given case venue may not be proper."). Therefore, although the change of venue was erroneous, the district court in Jim Wells County had jurisdiction to try the case. We overrule the fourteenth point of error.

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed.