COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-339-CR
 
DELBERT LEON HARRISON                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                                   
STATE
------------
FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
------------
MEMORANDUM OPINION
(1)
------------
I.
Introduction
A jury convicted Appellant Delbert
Harrison of aggravated assault, and the trial court sentenced him to 30 years'
confinement. In two points, Harrison contends that the evidence is legally
insufficient to support his conviction and that the trial court erred by
permitting a State's witness to testify without first determining whether the
witness was qualified as a fingerprint expert. We will affirm.
II. Background
Facts
Harrison was charged with
assaulting Kimberly McDade and causing her serious bodily injury. Harrison and
McDade lived together in Denton, Texas with Tina Richardson and Richardson's
son, Shawn. On February 3, 2002, Harrison, McDade, and Shawn went to run some
errands. They ate at a restaurant called "No Frills" in Sanger, and
both Harrison and McDade consumed alcoholic beverages.
Later in the day, as they continued
to run errands, Harrison and McDade argued. When the trio finally arrived back
at their apartment, Shawn exited the car, but Harrison and McDade remained in
the car, arguing. Harrison was sitting in the front passenger seat, and McDade
was sitting in the driver's seat. McDade told Harrison that she wanted him to
move out and demanded that he return her gold chain. Harrison removed the gold
chain from his neck and threw it on the dashboard. McDade also demanded that
Harrison return a cell phone that was in Richardson's name. Harrison responded
by hitting McDade in the face with the cell phone. McDade then reached out to
hit Harrison with her left arm, but Harrison grabbed her outstretched arm.
McDade testified that she felt and heard her arm snap almost immediately after
Harrison grabbed it. McDade became hysterical because her arm would not function
properly, and Harrison drove her to the hospital.
Doctors at the hospital diagnosed
McDade with a broken arm and a collapsed lung. Dr. Charles Hopkins, M.D.,
testified that McDade's left humerus was broken and that the break was a spiral
fracture--a break resulting from a twisting motion. McDade underwent surgery so
that a titanium rod and two screws could be placed in her left arm.
Additionally, a tube was inserted in McDade's lung to prevent it from collapsing
again. Dr. Hopkins testified that significant force was necessary to inflict the
spiral break in McDade's arm and said that McDade's broken arm constituted
serious bodily injury.
Detective Leverton, an investigator
for the Denton Police Department, took Harrison's statement. In his statement,
Harrison admitted, "I grabbed her left arm. I guess I twisted it and caused
it to break. We both heard it snap." Harrison continued by stating that he
"twisted the arm more than [he] thought" and that "[he] didn't
mean to break her arm."
McDade lost her job because she
missed a lot of work for doctor appointments and because she was unable to
perform some of her duties due to the injury to her left arm. McDade also
testified that she was unable to perform a number of mundane tasks because of
her weak left arm. By way of example, McDade said that she was unable to sleep
on her left side, tie a dress behind her back, walk her dog with her left hand,
or lift anything over eight pounds with her left arm without suffering pain.
III. Legal
Sufficiency
In his first point, Harrison
alleges the evidence is legally insufficient to support his conviction for
aggravated assault. Specifically, he contends that no evidence exists that he
caused serious bodily injury to McDade.
In reviewing the legal sufficiency
of the evidence to support a conviction, we view all the evidence in the light
most favorable to the verdict in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).
This standard gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443
U.S. at 319, 99 S. Ct. at 2789. When performing a legal sufficiency review, we
may not sit as a thirteenth juror, re-evaluating the weight and credibility of
the evidence and, thus, substituting our judgment for that of the fact finder. Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied,
529 U.S. 1131 (2000).
A person commits assault if the
person intentionally, knowingly, or recklessly causes bodily injury to another.
Tex. Penal Code Ann. § 22.01(a)(1) (Vernon 2003). A person commits aggravated
assault if the person causes serious bodily injury to another. Id. §
22.02. Here, the State charged Harrison with "intentionally or knowingly
caus[ing] bodily injury to Kimberly McDade by striking Kimberly McDade and
twisting Kimberly McDade's arm and the defendant did then and there cause
serious bodily injury to Kimberly McDade." The evidence presented showed
that Harrison grabbed McDade's arm and twisted it. Harrison and McDade both
heard McDade's arm snap. In his statement, Harrison admitted twisting McDade's
arm, even more than he originally thought. Moreover, after examining and
operating on McDade, Dr. Hopkins testified that McDade had suffered serious
bodily injury. Despite Harrison's allegation in his brief that "[w]hen [he]
grabbed [McDade's] arm, her act of pulling her left arm away would have caused
the twisting motion that caused it to break," viewing the evidence in the
light most favorable to the jury's verdict, it amply supports Harrison's
conviction for aggravated assault. See Jackson v. Virginia, 443
U.S. at 319, 99 S. Ct. at 2789; Garza v. State, 974 S.W.2d 251, 256
(Tex. App.--San Antonio 1998, pet. ref'd). A rational jury could have concluded
beyond a reasonable doubt that Harrison grabbed, twisted, and broke McDade's
arm, causing serious bodily injury. Accordingly, we overrule Harrison's first
point.
IV. Expert
Testimony
In his second point, Harrison
complains that the trial court erred by allowing Marjorie Rochelle to testify
without first determining whether she was qualified as a fingerprint expert. He
also contends that the trial court failed to determine whether the fingerprint
evidence offered had the indicia of reliability required by Daubert.
(2)
Harrison's indictment contains two
enhancement paragraphs pleading two prior felony convictions--one in California
and one in Michigan. The State offered into evidence penitentiary packets
relating to these prior offenses, and Rochelle testified that the fingerprints
in the packets matched fingerprints she took from Harrison. When the State
offered State's Exhibit number eighteen into evidence, Harrison's fingerprints
taken by Rochelle, Harrison objected, contending that Rochelle had not been
qualified as an expert. The trial court overruled Harrison's objection.
The burden of establishing a
witness's qualifications lies with the party offering the testimony. Matson
v. State, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991). No rigid formula
exists for determining whether a particular witness is qualified to testify as
an expert. Id. at 851 n.10. Consequently, the question of whether a
witness offered as an expert possesses the required qualifications rests largely
in the trial court's discretion. Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000); see also Tex. R. Evid. 702. Absent an abuse of
discretion, the trial court's decision to admit or exclude testimony will not be
disturbed. Wyatt, 23 S.W.3d at 27.
Here, the State established that
Rochelle had been employed by the Lewisville Police Department for the last
seventeen years. She had received forty hours of fingerprint training from the
FBI. Rochelle testified:

        
 [State]: And have you had any training with regard to using fingerprints to
 identify people?
        
 [Witness]: Yes, I have. In July of last year.
        
 [State]: Okay. And what type of training did you receive to be able to examine
 fingerprints?
        
 [Witness]: I received 40 hours of fingerprint classification taught by the
 FBI.
        
 [State]: Okay. And have you ever had an opportunity to testify in court with
 regard to fingerprint identification?
        
 [Witness]: Yes, I have.
        
 [State]: Would you briefly explain to the Court what a fingerprint is.
        
 [Witness]: A fingerprint or a latent print, latent means invisible, which
 means that you cannot see it, so that it's lifted using different powders and
 tools and tapes and it is examined. A print is a mark that is left by the oils
 of the skin.
        
 [State]: And what is an inked print?
        
 [Witness]: Is a rolled print off of an ink pad onto paper.
        
 [State]: And have you ever found in your experience two people who have had
 the same fingerprints?
        
 [Witness]: No.
        
 [State]: And have you ever heard of two people with the same fingerprints?
        
 [Witness]: No.

Based on this evidence, we cannot
conclude that the trial court abused its discretion by permitting Rochelle to
testify as a fingerprint expert. We overrule this portion of Harrison's second
point.
Next, Harrison seems to argue that
Rochelle's fingerprint testimony was not reliable or relevant. Specifically,
Harrison contends:

        
 The trial court failed to make a determination that the witness was an expert
 under the requirements of Rule 702
 or that the fingerprint evidence offered had the indicia of
 reliability necessary to satisfy the standard set in Daubert
 and Kumho Tire.

 
To preserve a complaint for our
review, however, a party must have presented to the trial court a timely
request, objection, or motion stating the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or
motion. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249,
265 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526 U.S. 1070
(1999). Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); Taylor
v. State, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996). Preservation of error
is a systemic requirement that this court should review on its own motion. Martinez
v. State, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); Hughes v.
State, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh'g), cert.
denied, 511 U.S. 1152 (1994).
Harrison did not object at trial on
the ground that Rochelle's fingerprint testimony was not reliable or relevant.
In fact, when the State offered State's Exhibit number eighteen--Harrison's
fingerprints taken by Rochelle--Harrison's attorney stated, "No objection
to that, but I do object to her testifying as an expert still -- it still hasn't
been established." Harrison's other objections to Rochelle's testimony did
not raise the issue of whether such evidence was reliable or relevant.
Consequently, Harrison did not preserve in the trial court the reliability and
relevancy complaints he raises here. See Tex. R. App. P. 33.1(a)(1); Mosley,
983 S.W2d at 265. We overrule this portion of Harrison's second point.
V. Conclusion
Having overruled both of Harrison's
points, we affirm the trial court's judgment.
 
                                                       
   SUE WALKER
                                                       
   JUSTICE
 
PANEL B: DAY, LIVINGSTON, and
WALKER, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: July 3, 2003

1. See Tex. R. App. P. 47.4.
2. Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993).