Delbert Leon Harrison v. State

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-339-CR

DELBERT LEON HARRISON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Delbert Harrison of aggravated assault, and the trial court sentenced him to 30 years’ confinement.  In two points, Harrison contends that the evidence is legally insufficient to support his  conviction and that the trial court erred by permitting a State’s witness to testify without first determining whether the witness was qualified as a fingerprint expert.  We will affirm.

II.  Background Facts

Harrison was charged with assaulting Kimberly McDade and causing her serious bodily injury.  Harrison and McDade lived together in Denton, Texas with Tina Richardson and Richardson’s son, Shawn.  On February 3, 2002, Harrison, McDade, and Shawn went to run some errands.  They ate at a restaurant called “No Frills” in Sanger, and both Harrison and McDade consumed alcoholic beverages.

Later in the day, as they continued to run errands, Harrison and McDade argued.  When the trio finally arrived back at their apartment, Shawn exited the car, but Harrison and McDade remained in the car, arguing.  Harrison was sitting in the front passenger seat, and McDade was sitting in the driver’s seat. McDade told  Harrison that she wanted him to move out and demanded that he return her gold chain.  Harrison removed the gold chain from his neck and threw it on the dashboard.  McDade also demanded that Harrison return a cell phone that was in Richardson’s name.  Harrison responded by hitting McDade in the face with the cell phone.  McDade then reached out to hit Harrison with her left arm, but Harrison grabbed her outstretched arm.  McDade testified that she felt and heard her arm snap almost immediately after Harrison grabbed it.  McDade became hysterical because her arm would not function properly, and Harrison drove her to the hospital.

Doctors at the hospital diagnosed McDade with a broken arm and a collapsed lung.  Dr. Charles Hopkins, M.D., testified that McDade’s left humerus was broken and that the break was a spiral fracture—a  break resulting from a twisting motion.  McDade underwent surgery so that a titanium rod and two screws could be placed in her left arm.  Additionally, a tube was inserted in McDade’s lung to prevent it from collapsing again.  Dr. Hopkins testified that significant force was necessary to inflict the spiral break in McDade’s arm and said that McDade’s broken arm constituted serious bodily injury. 

Detective Leverton, an investigator for the Denton Police Department, took Harrison’s statement.  In his statement, Harrison admitted, “I grabbed her left arm.  I guess I twisted it and caused it to break.  We both heard it snap.” Harrison continued by stating that he “twisted the arm more than [he] thought” and that “[he] didn’t mean to break her arm.” 

McDade lost her job because she missed a lot of work for doctor appointments and because she was unable to perform some of her duties due to the injury to her left arm.  McDade also testified that she was unable to perform a number of mundane tasks because of her weak left arm.  By way of example, McDade said that she was unable to sleep on her left side, tie a dress behind her back, walk her dog with her left hand, or lift anything over eight pounds with her left arm without suffering pain.

III.  Legal Sufficiency

In his first point, Harrison alleges the evidence is legally insufficient to support his conviction for aggravated assault.
  Specifically, he contends that no evidence exists that he caused serious bodily injury to McDade.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another.  
Tex. Penal Code Ann.
 § 22.01(a)(1) (Vernon 2003).  A person commits aggravated assault if the person causes serious bodily injury to another.  
Id
.
 § 22.02.  Here, the State charged Harrison with “intentionally or knowingly caus[ing] bodily injury to Kimberly McDade by striking Kimberly McDade and twisting Kimberly McDade’s arm and the defendant did then and there cause serious bodily injury to Kimberly McDade.”  The evidence  presented showed that Harrison grabbed McDade’s arm and twisted it.  Harrison and McDade both heard McDade’s arm snap.  In his statement, Harrison admitted twisting McDade’s arm, even more than he originally thought.  Moreover, after examining and operating on McDade, Dr. Hopkins testified that McDade had suffered serious bodily injury. Despite Harrison’s allegation in his brief that “[w]hen [he] grabbed [McDade’s] arm, her act of pulling her left arm away would have caused the twisting motion that caused it to break,” viewing the evidence in the light most favorable to the jury’s verdict, it amply supports Harrison’s conviction for aggravated assault.  
See
 
Jackson v. Virginia, 
443 U.S. at 319, 99 S. Ct. at 2789;
 Garza v. State,
 974 S.W.2d 251, 256 (Tex. App.—San Antonio 1998, pet. ref’d)
.  A rational jury could have concluded beyond a reasonable doubt that Harrison grabbed, twisted, and broke McDade’s arm, causing serious bodily injury.  Accordingly, we overrule Harrison’s first point.

IV.  Expert Testimony

In his second point, Harrison complains that the trial court erred by allowing Marjorie Rochelle to testify without first determining whether she was qualified as a fingerprint expert.  He also contends that the trial court failed to determine whether the fingerprint evidence offered had the indicia of reliability required by 
Daubert
.
(footnote: 2) 

Harrison’s indictment contains two enhancement paragraphs pleading two prior felony convictions—one in California and one in Michigan. 
 The State offered into evidence penitentiary packets relating to these prior offenses, and Rochelle testified that the fingerprints in the packets matched fingerprints she took from Harrison.  When the State offered State’s Exhibit number eighteen
 into evidence, Harrison’s fingerprints taken by Rochelle, Harrison objected, contending that Rochelle had not been qualified as an expert.  The trial court overruled Harrison’s objection.

The burden of establishing a witness’s qualifications lies with the party offering the testimony.  
Matson v. State,
 819 S.W.2d 839, 851 (Tex. Crim. App. 1991).  No rigid formula exists for determining whether a particular witness is qualified to testify as an expert.  
Id.
 at 851 n.10.  Consequently, the question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion.  
Wyatt v. State
, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); 
see
 
also
 
Tex. R. Evid.
 702
 .  Absent an abuse of discretion, the trial court's decision to admit or exclude testimony will not be
 
disturbed. 
Wyatt
, 23 S.W.3d at 27.

Here, the State established that Rochelle had been employed by the Lewisville Police Department for the last seventeen years.  She had received forty hours of fingerprint training from the FBI.  Rochelle testified:

[State]:  And have you had any training with regard to using fingerprints to identify people?

[Witness]: Yes, I have.  In July of last year.

[State]:  Okay.  And what type of training did you receive to be able to examine fingerprints?

[Witness]:  I received 40 hours of fingerprint classification taught by the FBI.

[State]:  Okay.  And have you ever had an opportunity to testify in court with regard to fingerprint identification?

[Witness]:  Yes, I have.

[State]:  Would you briefly explain to the Court what a fingerprint is.

[Witness]:  A fingerprint or a latent print, latent means invisible, which means that you cannot see it, so that it’s lifted using different powders and tools and tapes and it is examined.  A print is a mark that is left by the oils of the skin.

[State]:  And what is an inked print?

[Witness]: Is a rolled print off of an ink pad onto paper.

[State]:  And have you ever found in your experience two people who have had the same fingerprints?

[Witness]: No.

[State]:  And have you ever heard of two people with the same fingerprints?

[Witness]: No.

Based on this evidence, we cannot conclude that the trial court abused its discretion by permitting Rochelle to testify as a fingerprint expert.  We overrule this portion of Harrison’s second point.

Next, Harrison seems to argue that Rochelle’s fingerprint testimony was not reliable or relevant.  Specifically, 
Harrison contends:

The trial court failed to make a determination that the witness was an expert under the requirements of 
Rule 702
 or 
that the fingerprint evidence offered had the indicia of reliability necessary to satisfy the standard set in 
Daubert
 and 
Kumho Tire
. 

To preserve a complaint for our review, however, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Taylor v. State
, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).  
Preservation of error is a systemic requirement that this court should review on its own motion. 
Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh’g), 
cert. denied
, 511 U.S. 1152 (1994).

Harrison did not object at trial on the ground that Rochelle’s fingerprint testimony was not reliable or relevant.  In fact, when the State offered State’s Exhibit number eighteen—Harrison’s fingerprints taken by Rochelle—Harrison’s attorney stated, “No objection to that, but I do object to her testifying as an expert still -- it still hasn’t been established.”  Harrison’s other objections to Rochelle’s testimony did not raise the issue of whether such evidence was reliable or relevant.  Consequently, Harrison did not preserve in the trial court the reliability and relevancy complaints he raises here.  
See
 
Tex. R. App. P.
 33.1(a)(1); 
Mosley, 
983 S.W2d at 265.  We overrule this portion of Harrison’s second point.

V.  Conclusion
 

Having overruled both of Harrison’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: July 3, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Daubert v. Merrell Dow Pharmaceuticals, Inc., 
509 U.S. 579, 597, 113 S. Ct. 2786, 2799
 (1993)
.