**Affirmed and Memorandum Opinion filed August 14, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00008-CV

---

**TROY THOELE, MIKE BARRO, RYAN PARTLOW, ADAM OUDA, AND TROY RICHARD, Appellants**

**V.**

**RENE HINOJOSA, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE PAROLE DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE; MARSHA MOBERLEY IN HER OFFICIAL CAPACITY AS CHAIRMAN OF THE TEXAS BOARD OF PARDONS AND PAROLES; AND THE TEXAS BOARD OF PARDONS AND PAROLES, Appellees**

---

**On Appeal from the 53rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-006192**

---

## MEMORANDUM OPINION

Appellants Troy Thoele, Mike Barro, Ryan Partlow, Adam Ouda, and Troy Richard are former inmates currently residing in the community while on parole. Because each Appellant was convicted of a crime of a sexual nature involving a child victim, each Appellant's release is subject to a mandatory condition (Special Condition X) that prohibits them from residing within certain proximity of a "Child Safety Zone." Tex. Gov't Code §§ 508.187 ("Child Safety Zone" for parolees), –.225 ("Child Safety Zone" for releasees on mandatory supervision). Each Appellant submitted a post-release housing plan that was denied because of its proximity to a school bus stop.

Appellants brought a putative class action asserting a Texas Administrative Procedure Act (APA) claim against the Texas Board of Pardons and Paroles (the Board). According to Appellants, the Board promulgated a "Bus Stop Rule" interpreting Section 508.187 to include school bus stops without providing a reasoned justification for the rule or the opportunity for public comment.

Appellants also asserted *ultra vires* and Uniform Declaratory Judgment Act (UDJA) claims against David Gutierrez[1] in his official capacity as chair of the Board of Pardons and Paroles; the Board; and Rene Hinojosa in his official capacity as the director of the Parole Division of the Texas Department of Criminal Justice (TDCJ) for implementing and enforcing the alleged "Bus Stop Rule". Denying having promulgated any such "Bus Stop Rule,", the Board filed a plea to the jurisdiction. Gutierrez and Hinojosa filed pleas to the jurisdiction denying having engaged in any

---

[1] Appellants named David Guitierrez in his official capacity as Chairman of the Texas Board of Pardons and Paroles. Gutierrez was succeeded by Marsha Moberley. In accordance with Rule 7.2(a) of the Texas Rules of Appellate Procedure, Chairman Moberley has been automatically substituted as the named party in this appeal. We will continue to name Gutierrez in our analysis to maintain consistency with the pleadings and record before us.

*ultra vires* activity. The trial court granted the pleas and dismissed all of Appellants' claims.

Appellants raise two issues on appeal. First, Appellants argue that the location of a school bus stop does not meet the statutory definition of a "Child Safety Zone" defined by statute as "premises where children commonly gather." Tex. Gov't Code § 508.187(b)(1)(B). Second, Appellants argue that the trial court erred by dismissing the matter in its entirety without addressing the argument that the "Bus Stop Rule" was promulgated in violation of the APA. We hold that Appellants' APA and UDJA claims are barred by sovereign immunity, and that Appellants have not pleaded viable *ultra vires* claims.[2] Accordingly, we affirm.

## BACKGROUND

Each of the Appellants was convicted of committing an offense of a sexual nature against a child victim. After their respective convictions, Appellants were incarcerated at facilities operated by TDCJ. Upon eligibility, each Appellant was evaluated by and approved for early release on parole by the Board. Because of the circumstances of their offenses—crimes of a sexual nature involving a child victim—each Appellant's parole is mandatorily subject to Special Condition X. Special Condition X prohibits parole-eligible individuals from going within a certain distance of a Child Safety Zone, defined by statute as "premises where children commonly gather." Tex. Gov't Code § 508.187(b)(1)(B).

### *Parole in Texas*

In Texas, parole is a "discretionary and conditional release of an eligible inmate . . . so that the inmate may serve the remainder of the inmate's sentence under

---

[2] Because we find jurisdiction lacking for other reasons, we do not reach the question of whether a school bus stop is a "Child Safety Zone" for purposes of the relevant statute.

supervision of the pardons and paroles division [of TDCJ]." *Id.* § 508.001(6). There is no constitutional right to release on parole in Texas; early release from incarceration is a privilege. *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir. 1991).

The parole process in Texas involves two independent agencies, the Board and TDCJ. *See* Tex. Gov't Code ch. 508; *id.* § 491.001. Each agency's role in the process is demarcated within Chapter 508's statutory scheme. *See id.* ch. 508 subch. B ("Board of Pardons and Paroles"), subch. D ("[TDCJ] Pardons and Parole Division").

TDCJ is charged with housing and supervising inmates who have been sentenced to a term of confinement in the state's custody. *Id.* § 493.004. TDCJ's institutional division houses the inmates during the term of their incarceration and is tasked with collecting certain metrics about each inmate's conduct—all placed in the inmate's file—while in custody. *Id.* § 508.152; Tex. Dep't of Crim. Just. Parole Div., *File Folder Composition*, PD/POP-2.1.1 (eff. Mar. 9, 1999). Once an inmate is eligible for parole, TDCJ transmits that file to the Board for review. PD/POP 2.1.11.

Upon receiving the inmate's file, a parole panel appointed by the Board is tasked with determining whether to grant parole to the inmate. Tex. Gov't Code § 508.141. The Board has sole discretion on whether to grant parole. Tex. Const. art. IV, § 11; Tex. Gov't Code §§ 508.0441, –.141(b). The Government Code lists several mandatory conditions—including Special Condition X—that the panel is required to impose. *See* Tex. Gov't Code §§ 508.181, –.192. However, the parole panel has discretion to modify Special Condition X upon request by the parolee. Tex. Gov't Code § 508.187(d).

If an offender meets the criteria in Section 508.187(a), the parole panel is required to impose Special Condition X as a mandatory condition of release. The statute states that:

> [a] parole panel shall establish a child safety zone as applicable to a releasee . . . by requiring as a condition of parole or mandatory supervision that the releasee:
>
>> (1) not:
>>
>>> (A) supervise or participate in any program that includes as participants or recipients persons who are 17 years of age or younger and that regularly provides athletic, civic, or cultural activities; or
>>>
>>> (B) go in, on, or within a distance specified by the [parole] panel of premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility[.]

*Id.* § 508.187(b).

After a parole panel approves parole and determines which parole conditions to impose, TDCJ steps back in to vet the inmate's proposed release plan. *Id.* § 508.181; *see* Tex. Dep't of Crim. Just. Parole Div., *Pre-Release Placement Investigation (PPI)*, PD/POP-2.1.11 (eff. Oct. 30, 2019). A TDCJ parole officer investigates the plan to make sure it complies with all the conditions imposed by the panel, such as ensuring that the proposed residence is not within proximity of a Child Safety Zone. PD/POP-2.1.11 at sec. II. 2. Based upon the results of their investigation, the reviewing officer "shall approve or deny the plan in accordance with [] this policy." PD/POP-2.1.11 at sec. II.

When possible, TDCJ parole officers are encouraged to approve housing if it is suitable. *Id.* at sec. III ("Failure of plans shall be regarded as a **last resort**[.]") (emphasis in original). However, a plan cannot be approved if it does not comply

with the conditions of parole. *Id.* at sec. III.E. In that situation, TDCJ works with the inmate to develop alternate release plans "in order to serve the best interests of the community and the offender." *Id.*

TDCJ parole officers continue to supervise the parolee once they are released to ensure they comply with the conditions of their release. Tex. Gov't Code §§ 508.001(7), –.112.

### *The Lawsuit*

Appellants filed a class action lawsuit on behalf of "all individuals on parole with Special Condition X or who have been discharged from parole in the State of Texas whose residential plans have been or may be rejected by enforcement of the "Bus Stop Rule." In the 353rd Civil District Court in Travis County. They asserted APA, UDJA, and *ultra vires* claims, requesting declaratory, mandamus, and injunctive relief.

As to their APA claim against the Board, Appellants asserted that the Board's inclusion of school bus stops as Child Safety Zones constituted a "rule" within the meaning of the APA. Because the Board failed to follow the procedural requirements of the APA in promulgating the rule, Appellants sought a declaration that the Board's "tacit adoption" of the "Bus Stop Rule" was "without legal authority and in violation of the [APA]."

Regarding their UDJA and *ultra vires* claims, Appellants pleaded that Gutierrez, former chair of the Board, "acted in an *ultra vires* fashion, in a manner [that] is contrary to law, and in excess of his legal authority, by tacitly allowing, affirmatively ratifying, implementing or enforcing the 'Bus Stop Rule.'" Similarly, Appellants alleged Hinojosa, director of TDCJ's parole division, "acted in an *ultra vires* fashion, in a manner [that] is contrary to law, and in excess of his legal

6

authority, when adopting, implementing, and enforcing the 'Bus Stop Rule.'" Appellants alleged that Appellees acted outside the scope of their authority when they "unlawfully disapproved [Appellants'] release plans solely because the residences [Appellants] have proposed to live while on parole are within 500 feet of a school bus stop."

As relief, Appellants sought to enjoin Gutierrez and Hinojosa from including school bus stops as Child Safety Zones. They also requested a declaration that Appellees' "adoption and enforcement of the 'Bus Stop Rule' exceeds [Appellees'] authority and that [Appellees] have engaged in *ultra vires* acts." Appellants asked the trial court to order Appellees to "re-assess any residential release plans submitted by individuals currently on parole with Condition X, and to approve or deny those plans without considering the proximity of a school bus stop to the proposed place of residence."

### *Appellees' Pleas to the Jurisdiction*

Appellees filed pleas to the jurisdiction. The Board and Gutierrez asserted sovereign immunity and asked the trial court to dismiss all claims because the Board had not enacted or implemented any such rule. Hinojosa also asserted sovereign immunity and further argued that Appellants' requested relief was barred under the redundant remedies doctrine.

The trial court held a hearing on Appellees' respective pleas and Appellants' request for a temporary injunction. At the hearing, Appellants Partlow and Ouda testified about how the denial of their housing plans impacted their ability to reintegrate into society. Partlow testified that he submitted seven different proposed residences to his parole officer. All of his proposals were rejected. In at least one instance, Partlow was told by a "parole officer at the Hightower Unit that the address

7

was denied due to a bus stop." Instead, he was forced to live in a halfway house before his TDCJ parole officer finally approved the house he lives in now.

Ouda's proposed housing plan *was* approved, and he was released to reside with his parents. However, the day after he arrived at his parents' house, his TDCJ parole officer informed him that the plan had been erroneously approved because the home was within 500 feet of a school bus stop. He was required to move. As a result, Ouda was placed on house arrest and transferred to a halfway house, where he resided for seven months until he was able to purchase a house that complied with Special Condition X.

Appellants also presented emails between Dianne Johnson (Appellant Troy Thoele's mother) and two representatives from TDCJ: regional director Joe Balleza and Hinojosa himself. In response to Johnson's question about why her residence had been denied, Ballez wrote "[p]arole rules require your son to reside at least 500ft from any Child Safety Zone, such as school bus stops. The school bus stop in question is under 500ft from the residence, therefore the residence cannot be approved." When asked who had imposed the Child Safety Zone condition on Thoele, Hinojosa responded that "[t]he Board of Pardons and Parole imposed special condition X (Sex Offender Conditions) . . . The child safety zone is a component of this condition when criteria is met according to policy and statute."

Jennifer Robinson, deputy director of TDCJ's parole division, testified about TDCJ's role in the parole process. Specifically, she testified that once approved, inmates submit proposed addresses to an "institutional parole officer" employed by the Board, who then sends it to a TDCJ field parole officer for investigation. That TDCJ parole officer vets the plan to ensure it complies with the conditions of parole. In evaluating proposed placements, TDCJ field officers "go out and they investigate that location" to "ensure that proposed residences were not within 500 feet of a Child

8

Safety Zone." When asked "who implemented the bus stop practice at [TDCJ's] parole division," Robinson replied that the practice predated her employment with TDCJ, which began in 1998. When asked "what authority does [TDCJ's] Parole Division rely on to enforce this practice," Robinson responded that "[t]he Government Code states that a Child Safety Zone is a place where children commonly gather."

The trial court denied Appellants' request for injunctive relief and granted the Board and TDCJ's respective pleas to the jurisdiction, dismissing all claims and denying the request for mandamus relief against each Appellant with prejudice "for lack of subject matter jurisdiction." This appeal followed.

## STANDARD OF REVIEW

Whether a court has subject matter jurisdiction over a cause is a question of law reviewed de novo. *Davis v. Morath*, 624 S.W.3d 215, 221 (Tex. 2021). "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (quoting *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999)).

When evidence is relevant to the question of jurisdiction, a court "may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000). "[I]n a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda*, 133

S.W.3d at 227. If the relevant evidence presented is undisputed or fails to raise a fact question, the trial court may rule on the plea as a matter of law. *Id.* at 228.

**ANALYSIS**

**I.** **"Bus Stop Rule"ADMINISTRATIVE PROCEDURE ACT CLAIM AGAINST THE BOARD OF PARDONS AND PAROLES**

As part of their second issue, Appellants challenge the trial court's dismissal of their claim against the Board for a "declaratory judgment invalidating the "Bus Stop Rule" under the Texas APA."

Chapter 2001 of the Government Code waives sovereign immunity to allow parties to challenge improperly promulgated rules in certain circumstances. *See generally* Tex. Gov't Code ch. 2001. Parties may bring actions for declaratory judgment "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." *Id.* § 2001.038(a); *see Kensington Title-Nevada, LLC v. Tex. Dep't of State Health Svcs.*, 710 S.W.3d 225, 230 (Tex. 2025).

Chapter 2001 is not universally applicable to all agency action, however. Section 2001.226 expressly states that Chapter 2001 "does not apply to a rule or internal procedure of the Texas Department of Criminal Justice or Texas Board of Criminal Justice that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure." Tex. Gov't Code § 2001.226. Accordingly, there is no waiver of sovereign immunity for Appellants to challenge a "Bus Stop Rule" to the extent that such a rule was created by TDCJ's Parole Board. *See Harrison v. Tex. Dep't of Crim. Just., Inst. Div.*, 164 S.W.3d 871, 876 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.) (interpreting Section 2001.226 to "expressly bar[]" review by the district court of TDCJ agency action). Significantly, Appellants acknowledge that Section 2001.226 bars them

from bringing an APA claim against TDJC's Parole Division based upon the promulgation or implementation of any "Bus Stop Rule."

Appellants argue that no statutory bar prevents them from alleging an APA challenge against the Board, a separate agency not mentioned in Section 2001.226's statutory carveout from Chapter 2001. According to Appellants, the Board failed to follow required APA procedures in creating and implementing a "Bus Stop Rule" that interprets Child Safety Zones to include school bus stops, thereby preventing Appellants from living at their proposed residences while on parole.

The Board responds that it has not promulgated a "Bus Stop Rule" of any sort. According to the Board, the trial court properly granted the plea because TDCJ is the agency in charge of vetting and approving housing plans—the Board has no role in that process. The Board contends that Appellants are attempting to circumvent the Legislature's express bar of APA claims against TDCJ by suing the Board for TDCJ's actions.

"[T]he APA applies only to statements of general applicability that implement, interpret or prescribe law or policy." *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994). A "rule" is a "state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency[.]" Tex. Gov't Code § 2001.003(6)(A).

A rule is invalid when the promulgating agency adopts the rule without following Chapter 2001's required rulemaking procedures, such as notice, publication, and public comment. *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008) (citing Tex. Gov't Code § 2001.035(a)). A court "shall reverse or remand the case for further proceedings if

11

substantial rights of the appellant have been prejudiced" when a rule is "made through unlawful procedure." Tex. Gov't Code § 2001.174(2)(C).

But "[i]f there is no 'rule as defined by the APA' being challenged, in other words, the claimant cannot obtain the declaratory relief the statute authorizes against the State, its agencies, or its agents, because sovereign immunity would bar the cause of action." *Slay v. Tex. Comm'n on Env't. Quality*, 351 S.W.3d 532, 545 (Tex. App.—Austin 2011, pet. denied) (citing *Combs v. City of Webster*, 311 S.W.3d 85, 100–01 (Tex. App.—Austin 2009, pet. denied)). "To the extent that no rule as defined by the APA is at issue, section 2001.038 does not provide any basis for the district court's jurisdiction over [the] declaratory judgment action." *Combs*, 311 S.W.3d at 100.

We agree with the Board that there is no "Bus Stop Rule" as defined by the APA that could provide a basis for the exercise of the district court's jurisdiction over Appellants' APA claim against the Board. Even if we take Appellants' allegations as true and assume that an injury has occurred, Appellants failed to establish that the challenged practices here constitute Board action at all—much less the invalid promulgation of a Board "rule" under the APA.

We find no Board statement or policy evidencing any practice or requirement to deny housing based on proximity to a school bus stop. By statute, the Board may impose Special Condition X and establish a Child Safety Zone applicable to an inmate serving a sentence for certain felony offenses of a sexual nature involving a child victim. *See* Tex. Gov't Code §§ 508.187, –.225. The Board's official policy on Special Condition X provides that sex offenders with child victims shall:

> Not go in, on, or within a distance specified by Board policy of a premises where children commonly gather, including a school, day care facility, and playground, public or private youth center, public

swimming pool, or video arcade facility [Child Safety Zone restrictions section 508.187(b)(1)(B) AND 508.225(a)(2), Texas Government Code.].

Tex. Bd. Pardons & Paroles, *Special Condition "X" (Sex Offender Condition)*, BPP-POL. 145.263 at sec. (D)(6) (Oct. 19, 2023).

The Board's official policy interpreting Special Condition X does not mention bus stops. That policy mirrors the language in Government Code Sections 508.187 and 508.225 almost word for word. Absent this policy, we cannot find, nor have Appellants identified, any other statement or policy by the Board interpreting Child Safety Zone.

Appellants nevertheless contend that the Board informally promulgated the "Bus Stop Rule" by requiring TDCJ to enforce it and that the Board cannot "evade responsibility for issuing a rule simply because someone else carries it out." But Appellants presented no evidence that the Board issued such a rule or even informally stated that school bus stops were "Child Safety Zone."

Nor did Appellants provide any evidence that the Board had any practice or role in denying housing plans based on their proximity to a school bus stop. At the hearing on Appellees' pleas to the jurisdiction, Partlow and Ouda testified that it was *TDCJ parole officers* who denied their housing plans. TDCJ's director Robinson testified that it was *TDCJ parole officers* who had a practice of denying housing plans based on proximity to school bus stops.

The evidence presented establishes that it was TDCJ parole officers—not the Board—who investigated and denied Appellants' proposed housing plans. And that role is in line with Chapter 508's bifurcation of duties in the parole process. The Board and TDCJ are distinct agencies with different duties and responsibilities in the parole process, all governed by chapter 508 of the Government Code. TDCJ is

charged with investigation and supervision of releasees. Tex. Gov't Code § 508.112. The Board's role is limited to that of approving parole and assessing which conditions apply. *Id.* §§ 508.0441, –.141. The authority to approve or deny housing plans is vested with TDCJ, an agency not subject to a suit by Appellants under the APA. *Id.* § 508.112 ("Duty of Division"); *id.* §2001.226 (TDCJ not subject to APA suit by parolee).

Appellants nevertheless argue that by failing to prohibit TDCJ from including school bus stops within Child Safety Zones, the Board implicitly ratified or adopted TDCJ's policy to do so. But Appellants present no authority to support their contention that APA liability can be imputed by the actions of a separate, independent agency. The plain text of the APA imposes responsibility on each agency only for its own rules or practices, and explicitly carves TDCJ's parole procedures out of the Act. *See infra* sec. III. Appellants cannot circumvent Section 2001.226's explicit exclusion by attributing TDCJ's actions and decisions to the Board. The trial court therefore did not err by granting the Board's plea to the jurisdiction on Appellants' APA claim.

Accordingly, we overrule Appellants' second issue with respect to their APA claim against the Board.

## II.   *ULTRA VIRES* AND UNIFORM DECLARATORY JUDGMENT ACT CLAIMS AGAINST THE CHAIR OF THE BOARD OF PARDONS AND PAROLES

Appellants also challenge the trial court's dismissal of their UDJA and *ultra vires* claims against Gutierrez, the former chair of the Board. Appellants pleaded that Gutierrez "acted in an *ultra vires* fashion . . . by tacitly allowing, affirmatively ratifying, implementing or enforcing the 'Bus Stop Rule'". Appellants' asserted that Gutierrez acted *ultra vires* by "impos[ing] the 'Bus Stop Rule'" that was improperly promulgated by the Board on Appellants.

14

An *ultra vires* action waives sovereign immunity if a plaintiff "allege[s], and ultimately prove[s], that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). The UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power . . . ." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Thus, the UDJA "is not a general waiver of sovereign immunity." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

Appellants provided no evidence to establish that Gutierrez took *any* action in denying their housing plans, much less that he "tacitly allowed, affirmatively ratified, implemented or enforced" the "Bus Stop Rule." The evidence in the record, including testimony from Appellants and TDCJ's witness, established that it was TDCJ parole officers who vetted and denied housing plans, not Gutierrez or any employee of the Board. The record contains no evidence that the Board has promulgated such a rule, and there is no evidence that Gutierrez implemented it if it did exist. Accordingly, we overrule Appellants' first issue with respect to Appellants' UDJA and *ultra vires* claims against Gutierrez.

III. *ULTRA VIRES* AND UNIFORM DECLARATORY JUDGMENT ACT CLAIMS AGAINST THE DIRECTOR OF THE INSTITUTIONAL DIVISION OF TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Finally, Appellants challenge the trial court's dismissal of their UDJA and *ultra vires* claims against Hinojosa, Director of the Parole Division of TDCJ. Appellants plead that Hinojosa "acted in an *ultra vires* fashion . . . when adopting, implementing and enforcing the 'Bus Stop Rule' by including school bus stops within the definition of a Child Safety Zone. Tex. Gov't Code §508.187(b)(1)(B) (defining as "premises where children commonly gather, including a school, day-

care facility, playground, public or private youth center, public swimming pool, or video arcade facility").

As discussed, Appellants have no ability to make an APA claim against TDCJ for promulgation of an invalid rule. Section 2001.226 expressly states that Chapter 2001 "does not apply to a rule or internal procedure of the Texas Department of Criminal Justice or Texas Board of Criminal Justice that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure." Tex. Gov't Code § 2001.226. This statute divested the trial court of jurisdiction over any APA claim against the TDCJ based on any rule or internal procedure of TDCJ. *See Harrison*, 164 S.W.3d at 876. Appellants acknowledge that the APA's sovereign immunity waiver "does not apply to the TDCJ."

Yet, there is little question based on the record before us, that if either Appellee implemented a "Bus Stop Rule" and applied it to Appellants, it was TDCJ. TDCJ is the entity that manages the conditions of Appellants' parole, including determining where they were allowed to live. Faced with this inability to challenge TDCJ's policy as an invalid rule under the APA, Appellants have turned instead to pursuing a claim for *ultra vires* conduct against Hinojosa.

*Ultra vires* claims, however, are limited. As the Texas Supreme Court has concluded, "whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue in any particular case. And so many legislative grants of authority, although not absolute, will be broad enough to bar most, if not all, allegedly ultra vires claims." *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016). That is the case here. The Legislature in Section 2001.226 barred any challenges by those on parole to rules implemented by TDCJ, thereby granting broad authority to TDCJ to implement rules relating to

16

parole. And, as the Texas Supreme Court has recognized, when a governmental entity is given broad power under a given statutory scheme, it will be given some leeway in construing statutory terms as wellabsent "manifest conflict" with the statute, making an *ultra vires* claim unavailable here. *Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 11 (Tex. 2015) (dismissing *ultra vires* claims and concluding pension board had broad authority to construe the statute and to add language necessary for administration of pension fund).

Although the Legislature may not have given TDCJ absolute discretion to interpret the definition of Child Safety Zone in any way it sees fit, it clearly granted TDCJ broad authority and discretion to ensure compliance with conditions of parole, including what locations constitute a Child Safety Zone under the statute and the rules that result from that interpretation. Under these circumstances, an *ultra vires* claim is not viable against Hinojosa, in his official capacity with TDCJ, for implementing a rule that prohibits parolees under Special Condition X from living within 500 feet of a school bus stop, where it is undisputed that children commonly gather. That is true, even if the interpretation of the statutory language at issue is a close question on whether a bus stop qualifies as a "premises," as Appellants argue. Interpreting "premises where children commonly gather" to include a school bus stop does not present a manifest conflict with the statute itself and is consistent with TDCJ's broad authority to enforce the conditions of parole. Appellants' *ultra vires* claim against Hinojosa fails.

We overrule Appellants' first issue with respect to their UDJA and *ultra vires* claims against Hinojosa.

17

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment granting Appellees' pleas to the jurisdiction and dismissing the case with prejudice.

_/s/ April Farris_____
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.